36  177
65h 268
65h 280

THE PEOPLE, *ex rel.* Stephen Crowell and others, *vs.* JOHN D. LAWRENCE and others, Commissioners, and THE BROOKLYN CENTRAL AND JAMAICA RAIL ROAD COMPANY.

If the state has the power to levy and collect a tax or assessment, to be paid to a rail road company as a compensation for the relinquishment of certain rights, it has the power to direct the transfer of the assessment, collectively, to the same company, for the same purpose, before its payment.

The imposition and confirmation of an assessment by the city of Brooklyn, in pursuance of the act of April 19, 1859, for the purpose of compensating the Long Island Rail Road Company for the relinquishment of its right to use steam power within said city, are not forbidden by the act relative to local improvements in the city of Brooklyn, passed April 11, 1861. (*Laws of* 1861, *p.* 462.)

Where commissioners of assessment, appointed under the act of April 19, 1859, upon certiorari directed to them, return the proceedings which resulted in their appointment, by which it appears that both the common council of Brooklyn and the supreme court, at special term, determined that a petition by a majority of the persons to be assessed, sufficient in form and character, had been presented to the common council, such determinations will be held conclusive, upon that question.

The acts of April 19, 1859, (*Laws of* 1859, *p.* 1109,) and March 23, 1860, (*Laws of* 1860, *p.* 173,) are not in conflict with the 16th section of the third article of the constitution, which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in its title."

Neither are those acts unconstitutional, on the ground that they authorize the taking of private property for a purpose not sanctioned by the constitution, and in a manner which that instrument forbids.

When the legislature determines that a public improvement will be a benefit to the adjacent property, and that the expenses of making the same shall be paid by the owners of such adjacent property, the courts have nothing to do with the correctness or incorrectness of the determination, but must assume the fact to be as the legislature assumes or declares it.

The wisdom or justice of the taxation is not a subject of judicial inquiry; nor is the purpose for which the tax is to be imposed.

The legislature is not confined, in such taxation, to existing political or civil districts; but may create a district for the purpose of taxation or assessment; and may impose the tax equally or *pro rata* upon all the property in the district thus formed *pro re nata*, or upon a rule of estimated benefit to different owners or individuals; and the proceeds of the assessment may be applied to some public or quasi public purpose, or to compensation to, or the redress of, individuals.

The constitution demands that the title of an act shall express the *subject*, not

The People *v.* Lawrence.

the *object,* of the act. It is the matter to which the statute relates, and with which it deals, and not what it professes to do, which is to be found in the title.

It is no constitutional objection to a statute that its title is vague or unmeaning as to its purpose, if it be sufficiently distinct as to the matter to which it refers.

*It seems* that no constitutional provision can be treated as merely directory and not imperative. But if any provisions of the constitution ought to be considered directory, the rule by which to ascertain what are mandatory and what directory must be those applied to statutes.

ON the 19th of April, 1859, the legislature passed an act, (*Sess. Laws of* 1859, *ch.* 484, *p.* 1109,) authorizing and directing the appointment of three commissioners by the supreme court, and authorizing such commissioners to enter into a contract with the Long Island Rail Road Company, or its assigns, for the following objects, viz: 1. The closing of the tunnel in Atlantic street. 2. The restoration of said street to its proper grade. 3. The relinquishment of its chartered right to use steam power within the city of Brooklyn. 4. The construction and operation of a substituted horse rail road between the south ferry and Jamaica. 5. That the Long Island Rail Road Company, or its assigns, should receive as compensation for compliance with such contract, and the surrender of the right to use steam, a sum not exceeding $125,000. The act then provides that the commissioners shall assess the sum which, by the terms of the contract, is to be paid for the objects aforesaid, together with an amount sufficient to cover the expenses of the commissioners, not exceeding $5000, upon the lots of land and premises embraced within a district in the city of Brooklyn, designated in the act. The commissioners are subjected to the rules prescribed in titles four and five of the city charter; a majority are authorized to act; they are not required to search for titles; and upon the confirmation of their report, the right to use steam is extinguished, and all laws allowing the use of steam are, from the time of such confirmation, repealed. Provision is then made for the collection of the

The People *v.* Lawrence.

assessment. On the 23d March, 1860, the legislature passed an amendatory act, (*Sess. Laws of* 1860, *ch.* 100, *p.* 173,) modifying the provisions of the act of 1859, by providing for an assignment of the assessment list to, and the appointment of, a collector thereof, by the Long Island Rail Road Company, or its assigns; and also imposing upon the company, or its assigns, a liability for damages which any person might sustain by reason of a failure to perform the contract. On the 1st August, 1859, John Winslow, John D. Lawrence and Theodore F. King were duly appointed commissioners, at a special term of this court, upon the petition of the common council. This order was never reversed or in any way appealed from. The commissioners made their first report July 28, 1860, then heard objections, and made a final report August 16, 1861. This report was confirmed, upon appeal, at special term, September 27, 1861. On the 21st October, 1861, a writ of *certiorari* was issued, upon the application of the relators, thirty-four in number, directed to the commissioners and the Brooklyn Central and Jamaica Rail Road Company, consolidated by act, (*Session Laws of* 1860, *page* 788,) who are the assigns of the Long Island Rail Road Company, which writ required a return of the proceedings of the commissioners, and a variety of other papers and proceedings. Two persons, other than the relators, appealed to the general term from the order of confirmation. And the defendants gave notice of a motion to quash or supersede the *certiorari* upon the return thereto, and an affidavit served. The appeal, and the motion to quash the *certiorari*, were heard together.

*B. D. Silliman*, for the relator.

*J. W. Gilbert*, for the respondents.

*By the Court*, EMOTT, J. This certiorari is addressed to the commissioners appointed under the act of April 19, 1859, to provide for closing the entrances of the tunnel of the

Long Island Rail Road Company, &c. (*Laws of* 1859, *page* 1109,) and to the Brooklyn Central and Jamaica Rail Road Company. It brings before us proceedings to assess certain sums upon lands of the relators, and the question which we have to determine is the validity of this assessment, or the authority of the commissioners to make it. If the statute under which they acted is unconstitutional and void, they acquired no jurisdiction, and their proceedings may be reversed or set aside, as they may be also if any step requisite, according to the act itself to confer or obtain jurisdiction, was omitted. There is also a subsequent statute in reference to this assessment, which is alleged to have vitiated it. In March, 1860, the legislature passed an act, (*Laws of* 1860, *p.* 173,) by which the commissioners appointed under the act of 1859, just quoted, were authorized and directed to assign the assessment made by them pursuant to that act, to the Long Island Rail Road Company, or their assigns, provided the latter would receive that transfer in lieu of money, in satisfaction of the amount to be paid them according to the agreement and the provisions of the act of 1859, for closing the tunnel and relinquishing the use of steam in Atlantic street. The company were also authorized by the same act of 1860 to appoint a collector, who should possess all the powers which would belong to a collector appointed by the commissioners as provided in the act of 1859. It appears by the return of the defendants, that an assignment of the assessments has been made to the Brooklyn Central and Jamaica Rail Road Company, who have succeeded by purchase and transfer to the rights of the Long Island Rail Road Company. It does not appear whether any collector has been appointed, or what, if any, steps have been taken for the collection of the assessments. In this proceeding, however, it is not our duty to pass upon the question of the validity of the power to appoint a collector conferred upon either the commissioners by the act of 1859, or the rail road corporation by the act of 1860, or to express an opinion as to

The People *v.* Lawrence.

the extent of the authority of such an officer. This assessment may be valid, although the machinery intended for its collection may fail. If the existence or the exercise of the authority to transfer the assessment to a rail road corporation, or to individuals, is a fatal objection to the validity of the assessment itself, it will be decisive of the present question. But an objection, constitutional or other, to the means which the act gives for the collection of the assessment, is not necessarily an objection to the assessment itself. We should not reverse the proceedings of the commissioners, if the statute provided no mode for the collection of their assessment, and we cannot be asked to do so because it gives a remedy for that purpose which is ineffectual or even unconstitutional. It is contended that the statute of 1860 is a delegation of taxing power to a corporation, and the constitutionality of such a delegation is denied. But in conferring the appointment of a collector of a tax or assessment upon any person or body of persons, no taxing power is delegated. Taxation consists in the imposition of a tax, and not in the designation of the agents for its collection; and these two functions of government or administration are as distinct as rights and remedies, in legal proceedings. It is sufficient for the present purpose, however, to say that the appointment of a collector is not brought before us by the present return, and that we perceive no reason why the attempt by the legislature to confer the power to designate such an agent or officer upon the commissioners under the act of 1859, or the rail road company to whom they have assigned this assessment according to the act of 1860, even if such an attempt were wholly ineffectual or unconstitutional, should invalidate the proceedings of the commissioners in making the assessment.

The authority and direction to assign the assessment itself to the Long Island Rail Road Company or its successors, does not afford any sound objection to the assessment. The act of 1859 provides for taxing or assessing an amount to be

determined by commissioners, but which was not to exceed $125,000, upon a certain district of the city of Brooklyn, for the purpose of compensating the Long Island Rail Road Company for relinquishing the use of steam power within the city limits, and for closing and leveling their tunnel. The commissioners were to make a contract with the company for these purposes, and upon compliance with this contract by the rail road company the commissioners were directed to proceed and collect the assessment, and were impliedly, if not expressly, required to pay it over when collected, to the rail road company. The act of 1860 modified the position of the parties, and the requirements of the act of 1859 in several respects. The compensation which the rail road company were to receive was made payable upon their executing the agreement to perform the various acts for which they were to be compensated, instead of requiring actual performance of these acts on their part, as a preliminary to receiving this compensation. The public and individuals who may be interested are left to their remedies upon the contract, instead of being protected by requiring its performance as a condition of payment. At the same time the commissioners are no longer required to collect the assessment, but they are to assign it to the rail road company, who are to receive it as compensation under their agreement, just as they would have received the money itself, if it had been collected. There can be no difference in the validity of the assessment itself, whether the money, when collected, is to be paid to the rail road company, or the right to receive it is assigned to them. If the state has the power to levy and collect a tax or assessment, to be paid to the rail road company for the purposes specified in the act of 1859, it has the power to direct the transfer of the assessment collectively to the same company, for the same purpose, before its payment. It is the character of the assessment, and the object to which it is appropriated, which are material, and not the manner of making it available to the corporation.

The People *v.* Lawrence.

It is objected, however, that the imposition and confirmation of this assessment is forbidden by the act relative to local improvements in the city of Brooklyn, passed April 11, 1861, (*Laws of* 1861, *p.* 462,) or that this latter act operates as a repeal of so much of the act of March 23, 1860, as authorizes the laying of this assessment before the Long Island Rail Road Company have entirely performed what they stipulate to do. We agree with the view taken of this question by Judge BROWN at the special term, upon the motion to confirm the report of the commissioners, and expressed in the opinion delivered by him in granting the motion. It is perfectly obvious that the act of 1861 relates to contracts for work and materials upon streets and avenues, made by direction of the common council, in the ordinary administration of the municipal government. It does not apply to an improvement of the description contemplated by the acts now before us, nor does it repeal or affect the special and complete provisions which these acts contain for the accomplishment of their purpose.

There is another objection stated to these proceedings, under the provisions of the act itself. This is that the commissioners did not obtain jurisdiction, because no petition by a majority of the persons to be assessed was presented to the common council as required by the first section of the act of 1859. This section provides that the common council shall, upon petition of a majority of the owners of land within the district specified in the act, make application to this court at a special term, for the appointment of commissioners. It was alleged by the relators, on their application for the certiorari, that no such petition can be found on the city files, and that they believe none such exists. It appears, however, by the return, that the common council determined by resolution that such a petition had been presented to them, and that they would therefore apply for the appointment of commissioners. It also appears that upon such application being made to this court, evidence was

exhibited to us of this fact, upon which the application was granted. Conceding that the existence of a petition by persons constituting in fact a majority of the owners within the district is a jurisdictional fact, and vital to the validity of the action of the commissioners, we are not now in a position to question the existence of that fact. It may be admitted that where the jurisdiction of a subordinate tribunal depends upon facts to be proved before themselves, and such facts are disputed, the evidence should be returned to a certiorari, and may be examined to see whether the fact be established. (*The People* v. *Goodwin,* 1 *Seld.* 568.) What amount of proof the court will require, or how far upon such a re-examination it will consider a question of the preponderance of evidence, may be a farther question. (*See* 21 *Barb.* 656; 1 *Hill,* 195; 4 *id.* 598.) But this rule only applies in the present case to matters required to be proved before the commissioners themselves. The writ is directed to them; and as they were not called to decide that the requisite number of owners had petitioned the common council to ask the court for their appointment, so they had no evidence before them to establish that fact. They return the proceedings which resulted in their appointment, by which it appears that both the common council and this court, at special term, determined that such a petition, sufficient in form and character, had been presented. These determinations must necessarily be conclusive in this proceeding, for we have no means of questioning or ascertaining their correctness, if we were disposed to do so.

The main question is the question of the constitutionality of the statutes under which these proceedings have been had, and especially of the act of 1859; and I proceed to examine the objections to these statutes. It is contended, in the first place, that they are in conflict with the 16th section of the 3d article of the constitution, which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." The counsel for the defendants objected very

earnestly on this argument, as he had done on a previous occasion in another case, to the view which was taken of this constitutional provision in the cases of *The Town of Fishkill* v. *The Fishkill and Beekman Plank Road Co.* (22 *Barb.* 643,) and *The People* v. *The Same,* (27 *id.* 445.) He urged upon us a refined construction and a narrow application of the provision, which would deprive it, I think, of all practical importance. With respect to the proposition that the clause in the constitution had no other object in question, and was intended to go no farther, than to prevent an improper combination of different subjects into one law, it is sufficient to observe that this object would have been accomplished by the prohibition contained in the first clause of the section, which relates to the substance of the act, without adding the subsequent injunction as to what the title shall express. It is not easy to see for what purpose the latter part of the section was intended, unless as Judge Gardiner said in the case of *The Sun Mutual Ins. Co.* v. *The Mayor of N. Y.,* (4 *Seld.* 253,) " that neither the members of the legislature, nor the public, should be misled by the title."

It is said that this provision of the constitution is merely directory, and only establishes a rule of legislative practice. In the opinion delivered in this court in *The People* v. *The Supervisors of Orange County,* (27 *Barb.* 575,) it was intimated that it might become necessary to apply such a construction to certain portions of the constitution. This view was not however adopted by the court, nor even by the opinion, nor was it indicated as any thing more than what might become the dictate of necessity, to relieve the legislation of the state of insuperable embarrassments. It would be law for an extreme case, if it should ever be laid down as law at all. I am not aware that any court in this state has yet felt constrained or authorized to hold any provision of the constitution to be merely directory. As was noticed in the case of the *The People* v. *The Supervisors of Orange County, (supra,)* Judge Willard, in delivering the opinion in the court of appeals in *The People* v. *The Supervisors of Chenango,* (4 *Seld.*

328,) says that the provision of the constitution requiring the question upon the final passage of a bill to be taken immediately, and the ayes and noes to be entered in the journal, is merely directory.   This must be observed to be his individual opinion only; but even if it be correct, it cannot be decisive of the construction of the clause now in question.   The direction which Judge Willard was discussing, related to legislative practice exclusively; to the time and manner of taking and recording the vote of the legislature on the passage of a bill, and speaks exclusively of a bill upon its passage.   The clause now in question relates to the form and the substance of the bill itself, and refers to it as and after it is passed by the legislature.  I think it will be found, upon full consideration, to be difficult to treat any constitutional provision as merely directory and not imperative.   At all events, it is difficult to hold that the requirement of this section of the constitution, as to the title and the contents of local bills passed by the legislature, are of such a character, without applying a similar construction to other clauses which plainly require, and in some instances have received judicially, a different interpretation.   Not to quote other instances, the 13th section of the 8th article, which requires that every law which imposes a tax shall distinctly state the tax and the object to which it is to be applied, is a regulation of a class of general laws, of a similar nature to that which the clause we are now considering applies to local legislation.   In the *Orange county tax case*, (27 *Barb.* 575,) in this court, and in the court of appeals, (17 *N. Y. Rep.* 281,) this provision was construed as obligatory, the suggestion in the opinion to which I have referred was not followed, and the validity of the law then in question was determined upon its conformity to what is there required.   In the still more recent case of *Brewster* v. *The City of Syracuse*, (19 *N. Y. Rep.* 116,) the provision now before us was in like manner assumed to be obligatory, and the law in question shown to satisfy its demands.   If the doctrine contended for by the defendant's

The People *v.* Lawrence.

counsel be sound, the court of appeals might have adopted in these cases the intimation of Judge Willard, in the Chenango case, and without considering whether the law conformed to the constitutional provision, have held it sufficient, because a want of conformity would not invalidate it.

A distinction between the cases is attempted for the reason that the clause we are now considering speaks of a " bill " instead of a law. It will be found upon examination of the constitution that the terms law, bill and act are used somewhat indefinitely, through the instrument. Section 14 of article 3, provides that no law shall be enacted except by bill; and the next section is to the effect that no *bill* shall be passed unless by the assent of a majority of all the members elected; which is as imperative as if it had said that no law should be passed unless by such assent. Then follows the section now in question, and it will be observed that this reads not merely no private or local bill, but no private or local bill, which may be passed by the legislature, shall embrace more than one subject. The constitution is undoubtedly prescribing the mode of legislation and speaking of its stages, and this may be the reason of the use of the term bill; but still a bill passed by the legislature is a law, and there is little room for criticism upon the difference in the two phrases. In the 12th section of the 7th or financial article of the constitution, the terms law and bill are used in reference to the same eneactment, as to its passage by the legislature, and its sanction by the people. The supreme court of Ohio have held, in a case reported in 6 *Ohio Rep.* 176, that a provision in the constitution of that state, to the effect that every bill shall be fully and distinctly read on three different days, and no bill shall contain more than one subject, which shall be clearly expressed in its title, was directory only, and a mere rule of legislative practice. There is a distinction between that case and this, because the clause in the constitution of New York, which we are considering, speaks of every private bill which may be passed by the legislature, and therefore does not refer

exclusively to bills on their passage. To which may be added, the consideration that the accompanying provisions of the constitution of Ohio do undoubtedly relate to and regulate a matter of mere practice in a legislative body, the reading of bills. The directions of the constitution of New York are of a different nature, regulating the contents or the frame of bills or laws, or the vote by which these must be passed, and the publicity of that vote. If any constitutional provisions ought to be considered directory, upon which I entertain great doubt, the rules by which to ascertain what are mandatory and what directory, must be those applied to statutes. There is perhaps no question in the law upon which the cases are more conflicting, or upon which it is more difficult to obtain definite and uniform rules, than this of the imperative or permissory character of statutes. The decisions will be found to have been dictated more by the inconveniences or the supposed necessities of cases, than by any uniform and intelligible principle of construction. It will at once be manifest how dangerous such a mode of construction would become, if applied to the fundamental law of the state, and how the whole structure and workings of the government might be put at the mercy of the fears or the fancies of judges. Even in respect to statutes, however, the cases in which they have been held to be directory will be found to be, in general, cases of regulations respecting the time or the precise mode of doing the act in question, and not affecting its substance, or the time or mode of doing some thing preliminary to or connected with it. It will be difficult to find authority for holding that even a statutory provision referring to the substance of the matter in question is not imperative; and whatever rule may be applied to some other parts of the present constitution, this respecting the contents and the titles of laws affects too nearly their substance to be safely construed by such a rule.

I have considered the question of the character of the constitutional provision with greater particularity in consequence

of the intimation which was thrown out in *the Orange county tax case*. Perhaps it was unnecessary to have done so, inasmuch as we are all of opinion that the statutes now in question are not open to any objection on the ground of this constitutional requirement. The title of the act of 1859 is, " An act to provide for the closing of the entrances of the tunnel of the Long Island Rail Road Company, in Atlantic street in the city of Brooklyn, and restoring said street to its proper grade, and for the relinquishment by said company of its right to use steam power within said city." The act provides in the first two sections for the appointment of commissioners to enter into a contract with the Long Island Rail Road Company, or its assigns, that they will close the tunnel in Atlantic street, will level the street to its grade, and will relinquish the use of steam power within the city, and that they shall receive a compensation for these acts, to be determined by the commissioners, and to be by them assessed upon the lands within a certain district. The third and fourth sections also contain somewhat particular and minute directions as to the provisions of the contract with the rail road company. They are to lay rails upon the surface of the street when graded, and to run horse cars upon them. The times and manner of running such horse cars, and the rates of fares, are specified, and the company are required to provide for carrying freight over the road, but not to carry any freight which the common council may declare a nuisance. Power is given to the common council to control the fares and the management of the road, as they are authorized to do in the case of existing city rail roads. At the time of the passage of this act, the Long Island Rail Road Company possessed and exercised the right to transport passengers and freight over a rail road through Atlantic street in cars propelled by steam. This rail way ran through a tunnel which had been constructed in the street, and which obstructed and interfered with its use, as did also the use of steam power. The purpose of this act of the legislature was to provide for clos-

ing the tunnel, and grading the street, and for the relinquishment of the use of steam power in the transportation of persons and property over the railway.   This is the general " subject" of the act.   The assessment which is in controversy is directed by the act to be laid for the purpose of compensating the Long Island Rail Road Company, for the expense which they would incur in removing the tunnel and grading the street, and for the relinquishment of their right to steam power within the city.   The provisions of the statute under which the present assessment was made, simply indicate the manner in which the means are to be furnished to make this compensation to the rail road company.   The means by which any object is to be effected are a part of one general subject with the object itself.   If an act of the legislature is passed to effect the object, the means for that purpose may properly, if they must not necessarily, be contained in the act, and it is sufficient that the title of the act describe the object to be accomplished, without specifying the means.   In the case of *The Sun Mutual Ins. Co.* v. *The Mayor of New York*, (5 *Sand. S. C. R.* 10,) Judge Oakley said: "The raising a tax and its collection and application may most reasonably be considered one subject."   It is equally plain that the removing a tunnel built and used by a rail road company, and excluding their locomotives from the streets of Brooklyn, and providing means to pay for that removal, are one subject, and that is the subject expressed in the title of this act.

   The objections to the law under the clause of the constitution which we have been considering, are directed mainly, if not entirely, against certain portions of the statute, which authorize and direct the rail road company, or its assigns, to stipulate in their contract with the commissioners that they will run horse cars over the track when laid in the street as graded, which impliedly confer the right to run such cars, and which provide for the regulation of the fares and the management of the road by the city authorities.   It has

never been held that when a local act includes more than one subject, and but one of the matters thus included is expressed in the title, the act is void in toto. In such a case the statute would be good in part and bad in part, as was the case in *The People* v. *The Beekman and Fishkill Plank Road,* (27 *Barb.* 445.) The various provisions relating to the use of horse cars, which, as is said by the counsel for the relators, confer the franchise of a horse rail road, might be invalid, and the residue of the statute, including those portions upon which this assessment rests, be valid.

But the relinquishment of the use of locomotives within the city limits involves the substitution of horse power, and the regulations and permissions respecting this, which the act contains, are incidental to the change. It may be that the use of cars drawn by horses, and taking up and setting down passengers at any point, may be highly advantageous to the company, but so it may also be to the public. Either way it is but another mode of using an existing franchise, for the company possessed the right to perform the same service with cars drawn by steam. The same remark applies to the provisions for the regulation of the freight and passenger business upon the rail road outside the city limits. These are incidental to the change of motive power and the consequent change in the manner of conducting the business of the road. It is no objection to the act, and introduces no new subject into it, that those provisions are to extend as well to the assigns of the Long Island Rail Road Company, as to that company itself. If this corporation can make and have made a valid transfer of its franchise, and its property in the tunnel and track, or of any or all its franchises, its assignee should be included within the provisions of a statute intended to change so materially the rights and relations of the public, and the owners of these franchises and rights of property.

With respect to the statute of 1860, I have already said that we are not required to pass upon the validity of the ap-

pointment, or the extent of the authority of the collector designated according to its provisions. Whatever might be our views on such a question, they would not be decisive of the validity of the residue of the act. In respect to the subject of this statute, it is not seriously contended that it is not single, but the objection is, that it is not expressed by the title of the act. If we were to listen to such a criticism as this, however, we should be led into a field of argument where the validity of legislative enactments would be made to depend, not upon the falsity or the duplicity of their provisions or their titles, but upon the particularity or the detail with which the titles were framed. Such cannot be the purpose of the constitution. It is sufficient if the general subject of the law be stated, and nothing is more frequent than to describe an act as an act in relation to that subject. Such is the title of this law, "An act in relation to the collection, payment and application of certain &c. assessments in the city of Brooklyn;" and although greater particularity would have given more definite information of the contents of the law, this general title sufficiently expresses its subject.

It must not be overlooked, that the constitution demands that the title of an act shall express the *subject*, not the *object*, of the act. It is the matter to which the statute relates, and with which it deals, and not what it proposes to do, which is to be found in the title. It is no constitutional objection to a statute, that its title is vague or unmeaning as to its purpose, if it be sufficiently distinct as to the matter to which it refers. In the language of Judge Johnson in *Brewster* v. *Syracuse*, (19 *N. Y. Rep.* 116,) the degree of particularity with which the title is to express the subject, rests in the discretion of the legislature. An abstract of the law is not required in the title.

The relators also contend strenuously that the acts in question are unconstitutional, because they authorize the taking of private property for a purpose not sanctioned by the constitution, and in a manner which that instrument forbids.

The People *v.* Lawrence.

The statute, through the action of the commission which it creates, operates upon the property of the rail road company, their tunnel and their franchises, and upon the property of individuals who, like the relators, own real estate within the district designated by the provisions of the act. As far as the rail road company is concerned, it does not lie with the relators to object to the manner or the purpose for which they are to be deprived of any rights of property. Besides this, the rail road company are to agree to the surrender of any rights of which they are to be divested, and have in fact agreed to such a surrender, before the statute could have any effect upon them. It is with them a simple matter of contract, and they are bound to comply with this as they would with any other contract. Whatever property they have parted with has been taken by their own consent. It was suggested that some easement or right in the street was also taken from the owners of the land within its limits. But there was no right or interest of any kind taken from such proprietors, if any of the relators are among them, of which we have no evidence, nor any additional servitude or easement imposed upon their lands, by removing an existing railway from a covered tunnel to the surface of the street, and changing its motive power from steam to horses.

The property of the relators is undoubtedly to be taken compulsorily by the assessment authorized by the act. But it is not by an exercise of the right of eminent domain that this is done. The theory of this act is, that the removal of the tunnel and of the use of locomotives from Atlantic street would be a benefit to the adjacent property, and that the expense of restoring the street to its grade, and the loss to the rail road company in discontinuing running their trains by steam to the foot of the street, should be paid by the owners of such adjacent property. The courts have nothing to do with the correctness or incorrectness of this legislative opinion, and must assume the fact to be as the legislature assume or declare it. The statute proceeds to describe and create a

district, and to provide for assessing the amount of this damage and expenditure upon the property in that district. This is clearly a legitimate exercise of the taxing power, under the doctrines of the leading case of *The People* v. *The Mayor of Brooklyn*, (4 *Comst.* 419,) and *Brewster* v. *The City of Syracuse*, (19 *N. Y. Rep.* 116.) The wisdom or justice of the taxation is not a subject of judicial inquiry, nor is the purpose for which the tax is to be imposed. The legislature are not confined in such taxation to existing political or civil districts. They may create a district for the purpose of taxation or assessment, as they did in both the cases cited. They may impose the tax equally or *pro rata* upon all the property in the district thus formed *pro re nata*, as was done in the Syracuse case, or upon a rule of estimated benefit to different owners or individuals, as in the well known Brooklyn case, and in that respect this case resembles its predecessor. The proceeds of the assessment may be applied to some public or quasi public purpose, or to compensation or the redress of individuals. In this respect the Syracuse case goes beyond what is called for here; for there the assessment was levied upon a portion of the city, to remunerate a contractor for his loss in constructing a sewer, under a contract which had proved unfortunate. The validity of such an assessment as the present, as an exercise of the taxing power, is no longer an open question in this state, and we cannot be expected to delay in discussing it.

These considerations also dispose of the objection that the power of taxing the relators' property is to be exercised in an unconstitutional manner, because the statute permits two of the three commissioners to act in the discharge of their duties. If these duties consisted in ascertaining the compensation to be made for private property to be taken for public use, by virtue of the right of eminent domain, such a question as that indicated by this objection might arise under section 7 of article 1 of the constitution. But since the functions of these commissioners are simply to assess and

impose a tax, these provisions of the constitution have no application, and it is unnecessary to consider how far a statute providing for an exercise of the right of eminent domain might be exposed to animadversion, for authorizing a majority of the commissioners to do all things required of the commissioners. There is no constitutional requirement that any number of commissioners or other officers should act in assessing or distributing a tax. The manner of exercising this function of government is left wholly to the discretion of the government itself.

We have thus gone through with the various objections to these proceedings without finding that any of them are valid, and we have therefore arrived at the conclusion that the proceedings must be affirmed with costs.

[Kings General Term, February 10, 1862. *Emott, Brown* and *Scrugham,* Justices.]