The judgment must be reversed, and a new trial granted, costs to abide the event.

[DUTCHESS GENERAL TERM, May 13, 1867. *Lott, J. F. Barnard* and *Gilbert*, Justices.]

---

THE PEOPLE *ex rel.* Morris Reynolds and others *vs.* THE CITY OF BROOKLYN.

After commissioners to estimate the expense and assess the damages of widening a street in a city have been appointed, in pursuance of a special act of the legislature, and have made their final report of estimate and assessment, which has been confirmed by the county court, and the proceedings have been reversed, on certiorari, by judgments of the Supreme Court, such commissioners have no power to file another report of estimate and assessment, in the same matter, their appointment being annulled by such judgments, and the commissioners being thenceforth *functi officio*. (J. F. BARNARD, J. dissented.)

The office of a certiorari is to bring up the record of the proceedings sought to be reviewed; and it is properly directed to the officer or body having the legal custody thereof.

Where the return of a city corporation to a writ of certiorari to remove proceedings for the widening of a street shows that the report of the commissioners, annexed thereto, contains a recital of the proceedings by which they were appointed; or a certified copy of such proceedings is appended thereto; the petition for the appointment of commissioners, and the order appointing them, form constituent parts of a single record, which is legally in the custody of the city corporation; and they are, by the return of such corporation, brought before the court, as fully and directly as any other part of the same record.

Any error in the direction of a writ of certiorari, or in the return thereto, must be corrected by motion. All objection on the ground of such irregularities, is waived by submitting to a hearing on its merits.

BY a special act of the legislature, Main street, in the city of Brooklyn, was widened, and the county court of Kings county was authorized to appoint three commissioners to

estimate the expense and assess the damages thereof. The laws in force, in relation to opening and widening streets in the city of Brooklyn, were made applicable to the proceedings of such commissioners. (*Laws of* 1861, *ch.* 191, *p.* 484.) In pursuance of the provisions of such act, three commissioners were appointed by the said county court, who entered upon the duties of their appointment, and made their final estimate and assessment, which, after being amended by direction of the court, was confirmed on the 5th day of October, 1863, by the said county court. Two writs of certiorari were sued out in this court, to review, for alleged errors, the proceedings under said act of 1861, and two several judgments were entered, one on the 13th of December, 1864, and the other on the 13th of January, 1865, reversing the proceedings in the matter of widening Main street. On the day following the entry of the last judgment, viz. on the 14th of January, 1865, the same commissioners filed another report of estimate and assessment, which was presented for confirmation, and confirmed by this court on the 6th of March, 1865.

A certiorari was then brought to review these proceedings, and to quash them, on the ground that the commissioners were without further jurisdiction in the matter, after the confirmation of their first report.

*Henry C. Murphy*, for the relators. I. This court, in reviewing by virtue of its general jurisdiction, on *certiorari*, the proceedings of an inferior tribunal, does not render judgment to correct any error of such tribunal. It either affirms or quashes the proceedings in such case entirely, or, where the proceedings are, in some of their parts, independent of each other, it may affirm a part and quash a part, but in either case the judgment is final, and the proceedings stand as left by this court, wholly quashed or wholly affirmed, or partly quashed or partly affirmed. The proceedings cannot be altered or amended by this court, and much less by the inferior court, whose proceedings are reviewed. (*Common-*

*wealth* v. *Blue Hill, &c.* 5 *Mass. R.* 420. *Commonwealth* v. *West Boston Bridge,* 13 *Pick.* 196.)

II. The proceedings reviewed cannot go back to the inferior tribunal. It is not in the power of this court to send them back ; because, having once made its decision, the inferior tribunal is *functus officio,* and can take no further cognizance of them. When, therefore, the commissioners for widening Main street made their report, and that report was confirmed, they were discharged of any further power in the premises, and had no longer any existence as such. They were created for a special purpose, and that was accomplished. (*Baldwin* v. *Calkins,* 10 *Wend.* 179.)

III. The power of the courts to send back the report of commissioners of estimate and assessment, in proceedings like those of Main street, is a statutory provision, and applies only upon a motion to confirm the report, and before confirmation. (*Laws of* 1861, *ch.* 191, § 2, *pp.* 485, 6. *Act to widen Main street, Laws of* 1854, *ch.* 384, *title* 4, § 13, *p.* 866. *Charter of Brooklyn.*)

IV. By the judgments of this court, on the former certioraris, the proceedings in widening Main street were reversed, without qualification. In order to carry out the improvement, it became necessary to commence *de novo,* for the appointment of new commissioners under the law of 1861. (*Baldwin* v. *Calkins, ut supra.*)

V. The commissioners who made the first assessment, in assuming to act in making a new assessment, without an appointment for that purpose, usurped a power which they did not possess, and their proceedings are utterly without jurisdiction and void.

*John G. Schumaker,* for the defendant. I. This is a common law certiorari, addressed to the city of Brooklyn. It does not bring before this court the proceedings in the county court, which resulted in the appointment of the commissioners. It appears that a petition was presented by persons alleging

The People v. City of Brooklyn.

themselves to be interested in the improvement, asking the appointment of commissioners, and that the court determined that these persons were so interested, and granted the order asked for. This determination is conclusive in this proceeding. (*People* v. *Lawrence,* 36 *Barb.* 177, 184.)

II. If the question of the sufficiency of the petition were before the court, the allegations which it contains are sufficient. The petitioners state, in the language of the act, (*Laws of* 1861, *p.* 435,) that they are interested in the improvement. This is not a question of pleading, but of substantial conformity to the act. Certainly under this averment, the petitioners' interest could be proved.

III. The provisions of the charter of Brooklyn, requiring the common council to prescribe a district of assessment, are totally inapplicable to this case. They only apply where the common council are required to hear the parties interested, and then to determine whether the improvement shall be made. Here the legislature have determined, as the first step, that the improvement shall be made.

IV. The same answer exists to the other objection to this proceeding, based upon the requirements of the charter of Brooklyn in regard to local improvements. These provisions are only applicable to this case after the commissioners are appointed, and then only so far as consistent with the act itself.

*By the Court,* GILBERT, J. The principal question presented in this case relates to the effect of the judgments of this court heretofore rendered, upon the returns to two several writs of certiorari, issued for the purpose of reviewing the proceedings, had under the act of April 13, 1861, (*Session Laws of* 1861, *p.* 485,) to estimate the expense of widening Main street, in the city of Brooklyn, and to assess on the property benefited by such improvement, the damages accruing therefrom. These writs were directed to the city of Brooklyn, and commanded them to return "all the proceedings

had, together with all reports, petitions, objections, affidavits, and all orders, matters, and things touching, or relating to the assessment, and proceedings had and taken in the matter of widening Main street, etc. and all orders made therein by the county court of Kings county." The said respondent, having in obedience to these writs returned a record containing all such proceedings, including the petition to said county court for the appointment of commissioners, and the order of said court, appointing them, the cases were brought to a hearing and judgment, in this court at general term. In one case the judgment, after reciting that it had been brought on for argument, " upon certiorari and return thereto, bringing up *the proceedings had in relation to the widening of Main street, under the act aforesaid,*" orders and adjudges, " *that said proceedings be reversed.*" In the other case, the judgment contains the same recital, and then orders and adjudges that " *all said proceedings be reversed.*" The said commissioners disregarded these judgments, and immediately after the same were entered, without having received any fresh authority, but acting solely under the aforesaid order of the county court appointing them, proceeded to make a new estimate and assessment ; and their report thereof having been confirmed by this court at special term, the writ before us was sued out, directed to the city of Brooklyn, commanding them to return " the petition on which said commissioners were appointed, and the order appointing them," together with the subsequent proceedings, referring particularly thereto. The return contains the same petition, and the same order appointing them, as were returned on the former occasion, together with their new report, and the papers relating to its confirmation.

1. Had these commissioners, then, power to make the estimate and assessment under review, or was their appointment annulled by the judgments in the former cases ? There can be no doubt that these judgments, in terms, embrace the proceedings, whereby the commissioners were appointed, and

explicitly reverse the same. The proceedings reversed are, *all those had in relation to the widening of Main street, under the act of* 1861. This language is sweeping and comprehensive ; and unless its legal effect can be restricted, or limited by something *aliunde*, each and every proceeding taken in relation to the improvement in question, prior to the rendition of such judgments, was vacated and annulled. (*See* 2 *Seld.* 320.) The opinion of the court, delivered by Mr. Justice BARNARD, upon the rendering of those judgments, states that the only error found in the proceedings was the assessment of the ferry franchise of the city of New York ; and that for this error, the report should be wholly set aside. Upon this it is contended, that the judgments actually rendered by the court were limited to the setting aside of the report of the commissioners only, and did not affect the proceedings previously had ; and that, therefore, the latter proceedings remained in force, and the power thereby conferred upon the commissioners continued, and authorized them to make the new estimate and assessment. We cannot assent to this proposition.

1. The judgments were in full force, and even if they were erroneous, neither the commissioners, nor the officers of the city of Brooklyn, had any right to disregard them. If a judgment be entered in such a manner as not to embody the actual decision of the court, the remedy of any aggrieved party is by motion to correct the mistake ; and if it be correctly entered, but be erroneous in law, the only remedy is by appeal. It will never do to allow the validity of judgments to be impeached in any other mode. For, as was said by JOHNSON, J. in *The People* v. *Sturtevant*, (5 *Seld.* 266,) " The principle is of universal force, that the order or judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be erroneous ;" and the enforcement of this principle, in the present case, becomes especially necessary, for the reason that the judgments under consideration would be a complete bar to any action or proceeding for enforcing

payment of any assessment, imposed by the commissioners in their last report, even if we should quash the certiorari before us. This would follow upon the familiar principle, already alluded to, that a judgment continues in full force and effect, and binds all parties and privies, until reversed by a direct proceeding for that purpose. The benefit of these judgments was not confined to the relators respectively, but being in favor of the people, enured to all persons assessed; and a subsequent inconsistent judgment would not have the effect to destroy rights acquired under them. The same court frequently, (perhaps too frequently,) reverses its previous decisions; but such reversals never have had, and without a statutory amendment never will have, the effect to restore rights, lost by the decisions reversed, unless an appeal be taken from the judgments entered thereon.

2. The decision actually made and entered in the minutes of the court, in each case, is in these words, "proceedings reversed with costs." Objections were raised in these cases, which if sustained by the court, necessarily involved a determination invalidating *all* the proceedings embraced in the record. We do not deem it suitable to this inquiry, to ascertain whether these objections were well founded in law or not; but we think the minutes of the court furnish better evidence that a majority of the judges, who composed the court, concurred in the judgments entered, than the opinion delivered furnishes, that they did not concur therein.

II. It is also said that notwithstanding the record contained in the returns to the former writs of certiorari embraced the proceeding in the county court which resulted in the appointment of commissioners, and that although specific objections were taken to the validity of those proceedings, yet as those writs were directed to the city of Brooklyn, they did not bring before this court the proceedings in the county court, and therefore the judgments did not affect the latter. We think this view is erroneous. The act of 1861, before referred to, provides that after the appointment of the com-

missioners shall have been made, " all laws then in force relating to the widening of streets in the city of Brooklyn, not inconsistent with the provisions of that act, shall apply to the proceedings of said commissioners." Among the laws thus adopted, was this provision of the charter of Brooklyn, viz. " after the reports of the commissioners shall be confirmed, the said reports shall be delivered to the common council of said city." (*Laws* 1854, *p.* 866, § 15.) The office of a certiorari is to bring up the record of the proceeding sought to be reviewed ; and it is properly directed to the officer, or body, having the legal custody thereof. The record, in cases like those under consideration, would not be complete unless it showed the authority of the commissioners. Hence, in practice, the report of the commissioners contains a recital of the proceedings whereby they were appointed, or a certified copy of such proceedings is appended thereto. No express statute is necessary to legalize such a practice. It will be upheld, because it is right, and appropriate in itself. The returns show that it was pursued in the instances before us ; and therefore the petition for the appointment of commissioners, and the order appointing them, formed constituent parts of a single record, which was legally in the custody of the city corporation ; and by its return was brought before the court, as fully and directly as any other part of the same record. (*Daniel* v. *Phillips,* 4 *T. R.* 499.) Another answer to this suggestion is, that it comes too late. Any error in the direction of the writ, or in the return thereto, must be corrected by motion. All objection on the ground of such irregularities, is waived, by submitting to a hearing on the merits.

We do not intend to intimate any thing contrary to that which the court held on this subject in the cases of *People ex rel. Crowell* v. *Lawrence,* (36 *Barb.* 177,) and *People ex rel. Porter* v. *Rochester,* (21 *id.* 656.) Conceding that the order of the county court appointing the commissioners was conclusive, yet the case in 36 *Barb.* is a direct authority for the

proposition that such order and the petition on which it was founded were properly before this court, upon the return.

III. We are also of the opinion that, independently of the questions before discussed, the commissioners were *functi officio,* at the time they made their last report. The whole proceeding is regulated by statute. (*Laws* 1854, *p.* 866.) There is no provision authorizing the sending back of the commissioners' report, after the same shall have been confirmed by the court. If the general power of the court embraces such an authority, (a question which we have not considered,) it has not been exercised. The first report of these commissioners was wholly set aside and annulled. After this they could not entertain jurisdiction of the matter again, without new proceedings. (*Baldwin* v. *Calkins,* 10 *Wend.* 181)

The proceedings under review must be reversed, with costs.


J. F. BARNARD, J. (dissenting.) The commissioners to estimate the expenses of widening Main street in the city of Brooklyn, and to assess the damages therefrom on such property as they thought benefited thereby, according to the provisions of chapter 131 of Session Laws of 1861, were regularly and legally appointed. This was decided in *The People ex rel. Wetmore* v. *The City of Brooklyn;* and although the report was reversed for the reason that they had improperly assessed for benefits a ferry franchise, the reversal had no such result as the removal of the commissioners so appointed. It destroyed the assessment ; and still left the commission to which the law sent the estimate and assessment for this improvement. An entire new report was necessary, but it was to be made by this commission. The legislature widened this street by law. It directed the county court of Kings county, or the special term of the Supreme Court, to appoint three disinterested persons as commissioners, upon the application of any person interested in the improvement. All other laws in reference to opening streets in Brooklyn were made applicable to the proceedings to be taken by this commission.

The law widening Main street provided for the appointment of but one set of commissioners, by its own provisions. According to the provisions of other laws then and now existing, a new commission is provided for only in case the county court, or the special term of this court, upon application to confirm their report, refuse, and then they may send it back for correction, either to the same or other commissioners. Until the commissioners are removed by one of these courts, the appointment must stand. No application for a new appiontment can be made while it does stand, either to the county court or the Supreme Court. The power has been exercised. The legislative act is not to be annulled because a mistake has been made by the commissioners in a principle of their assessment. They are not *functi officio* until they have made the assessment according to law, which they have been appointed to make. This being the only question raised by the writ of certiorari, I think the report of the commissioners should be affirmed, with costs.

Proceedings reversed.

[DUTCHESS GENERAL TERM, May 13, 1867. *Scrugham, Gilbert* and *J. F. Barnard,* Justices.]