Osborn, J.
This action is brought on the official bond of two of the defendants and their deceased" colleague, as commissioners of the town of Shawangunk, under an act of the legislature passed May 9, 1866, chap. 880. The breach of the bond assigned in the complaint is the willful collusion and fraudulent issue of the bonds of Shawangunk by the commissioners before, and without obtaining the requisite number and amount of consents on the part of tax-payers.
The defense demurred to interposes an act of the legislature passed March, 1868, chap. 45, and pleads section 2, and insists that by virtue thereof the •bond in question “became and has from thence hitherto continued and now is well and fully performed, null, and void, by reason whereof, the plaintiffs amended complaint should be dismissed.”
The section referred to reads as follows: “ Section 2. The acts of the commissioners in issuing the bonds of tne second election district of the towns of Montgomery, in Orange county, and of the towns of Gardiner and Shawangunk, in Ulster county, in aid of the Walkill Valley Railroad are hereby ratified and confirmed.”
The question presented is whether this act, if valid, *47 takes away the right of action by the town through the supervisor against the commissioners upon their official bond, for malfeasance in issuing the bonds, and for the purpose of this demurrer we must assume as true the allegations in the complaint.
It was doubtless the main object of the legislature in enacting this section to give validity, as far as possible, to the bonds which had been issued, and yet the peculiar language employed must not be forgotten.
It is urged by the learned counsel for the plaintiff that the curative statute of 1868 cannot impart validity to the bonds for the reason,
1. That there was no authority on the part of the legislature to permit towns to issue bonds and exchange them for stock in a railroad company without obtaining the consent of a majority of the tax-payers, and also representing a majority of the taxable property. 2. That the legislature could not accomplish by two acts what it could not by one. In a word, if it required as a condition precedent to the bonding, the consent of a majority of the tax-payers, and also the consent of a majority of the taxable property, the legislature could not by a second act give life and validity to bonds that had been illegally issued, without obtaining such consents (People ex rel. &c. v. Batchellor, 53 N. Y. 128).
The learned counsel further urges that if this act (act of 1868) is to be treated or regarded as an act for the protection of the commissioners then that such act is in contravention of section 16, article 3, of the constitution of the State, which provides, “ that no private or local bill shall embrace more than one subject and that shall be expressed in the title.”
As the question before me does not necessarily involve an examination in reference to the validity of .the bonds issued by the defendants as commissioners, or the effect which the ratifying dr confirmatory act of 1868 had upon the bonds it is hardly necessary to see *48 or to consider whether when the act of 1866 was passed, appointing commissioners and authorizing the issuing of these bonds, the legislature could not (if it had seen fit so to do) have authorized the issuance thereof without requiring the consent of parties representing a majority of the taxable property of the town, or without securing the consent of any of the tax-payers.
When this act was passed, there was no restriction or limitation as to the exercise of this power.
If the legislature had this power it seems to me that it follows as a matter of course that it could validate retrospectively what it might have authorized in advance. Indeed, this seems to be clearly settled in the case of the People v. Mitchell, 35 N. Y. 552. It seems to me also equally clear that whatever the legislature could not have authorized originally, it cannot confirm. That is, if the legislature could not authorize the issuing of bonds until the consents of those representing a majority of the taxable property of the town had been obtained, it could not, by a subsequent act of ratification, validate the bonds, it appearing that such consent never had been obtained. As stated before, this would be an effort to accomplish by two acts, what could not be done by one, and would lead to the most pernicious consequences.
The question here is, what or how does the act of' 1868 affect the acts of the commissioners ?
The plaintiff is a supervisor of the town of Shawangunk; he is a creature of the statute and must find therein the authority for all he does and says in his official capacity. The defendants are created commissioners under the act of 1866; they are creatures of that.áct, the bond in suit is authorized by the same act, and has no force or validity except by virtue thereof. The right of action on this bond is given to the plaintiff as supervisor by the same statute. So that we start here with all the parties creatures of the legislature as *49 well as the subject-matter of the action, and the right to maintain the same by the plaintiff in his official capacity. Can it be said that the power which created each and all of these, giving to each its functions, cannot ratify and confirm the acts of the commissioners or that the effect of such ratification is not to relieve the defendants from all liability for their acts ? It seems to me clearly not. Can the proposition be maintained that the legislature may say to the commissioners, officers of its own creation, “Every act and step you have taken is herely ratified and confirmed;’ ’ and at the same time say to the plaintiff, an officer also of its creation, whose sole power, so far as this action is concerned, is derived from the very same act constituting these commissioners, “You may take up, prosecute and maintain this action upon the official bond of the commissioners because of acts we have ratified, confirmed, legalized?” It seems to me as though the mere statement of the proposition at once suggests the answer. It may be that the sole purpose and object of the legislature in the confirmatory act of 1868, was to validate the bonds, but if so, very strange language was employed : indeed - if the sole purpose had been to relieve the commissioners from any liability for their official acts it would be difficult to employ more appropriate language than is here found.
In a word, it seems to me clear, that the effect of this act is to relieve the commissioners from all liability on account of their official acts, if the act can be upheld. Is it unconstitutional ?
Article 3, section 16, of the constitution of the State, provides that ‘6 no private or local bill which may be passed by the legislature shall embrace more than one subject and that shall be expressed in the title.”
The title to the act in question is as follows: “An act in relation to the Walkill Valley Railroad and the *50 town bonds issued in aid of its construction ” (chap. 45, Laws of 1868).
The object of this provision is obvious. It was to prevent the passage of bad laws, through the inadvertence of the legislature or while deceived by a title which would seem to commend the whole bill to favor. It certainly was not intended by this provision to make it necessary to incorporate in the title the various provisions of the bill in detail (Sun Mut. Ins. Co. v. Mayor of N. Y., 8 N. Y. 241).
The courts are not inclined to defeat the action of the legislature and to declare acts unconstitutional, because the title is not as full or clear as could be wished. After a careful examination of the various authorities to which I have been referred and others I have come to the conclusion that the act under consideration embraces but one subjeckand that this is sufficiently expressed in the title (People v. Lawrence, 36 Barb. 177; Matter of Van Antwerp, 56 N. Y. 261; People ex rel. City of Rochester v. Briggs, 50 N. Y. 553). In the case last cited the court holds ‘1 that it is not requisite that the most expressive title shall be adopted, nor will courts criticise too rigidly the details of a bill to find extraneous matter.”
The degree of particularity with which the title of an act is to express its subject rests in the discretion of the legislature. When the title expresses' a general purpose or object, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. But if I had any doubt on that point I should be inclined to follow the holding of Judge Ingalls in considering this very question, where he decides expressly that the act in question is constitutional and completely justified the issuance of the bonds.
It has not been urged that this act is in violation of *51 the constitution of the United States as being ex post facto legislation or as impairing the obligation of contracts. The question as to whether legislation is ex post facto, whether it impairs the obligation of contracts, taking away some vested right, could probably arise only where individual personal rights are affected, and not in a case like this, where all the parties, the bond and the right of action upon it, are all creations of the statute. But I need not discuss this point further, as the same is not raised or suggested in plaintiff’s brief and points.
The demurrer must be overruled with costs, and the answer be allowed to stand.