## TODD *v*. MACFARLAND.

---

## ISAMINGER *v*. SAME.

---

## MYTINGER *v*. SAME.

---

CONDEMNATION OF LAND FOR STREET EXTENSION; PRACTICE.

1. Where under the act of Congress of March 3, 1899, for the widening and extending of certain streets in this District and directing that proceedings for the condemnation of the lands shall be taken as provided for by Chap. 11, R. S. D. C., relating to the condem-

nation of lands in the District for public highways, such proceedings are taken, and the award of a jury of seven is ratified and confirmed by the lower court, notwithstanding certain of the landowners have excepted to such award, the order of the lower court will be reversed, because by Sec. 263 of Chap. 11, R. S. D. C., if any owner is dissatisfied with the verdict of the jury of seven, a jury of twelve must be forthwith summoned to assess the damages and benefits; *following* Brown v. Macfarland, 19 D. C. 525.

2. In such proceedings, a landowner is entitled to have the verdict of the jury of seven set aside on exceptions relating only to the assessments for benefits made upon his lands, even though he has accepted the award of damages made by the same verdict.

3. The fact that Sec. 12 of the act of Congress of March 3, 1899, providing for the condemnation of land in the District for street extension, does not provide an effective provision for the collection of assessments for benefits, does not render the act void, either as to the damages awarded or the assessments levied, as such defective means of collection may be cured by a subsequent act of Congress.

Nos. 1156, 1157, 1158. Submitted May 9, 1902. Decided May 20, 1902.

HEARING on appeals by several exceptants from an order of the Supreme Court of the District of Columbia, sitting as a District Court, overruling exceptions to and confirming a verdict and award of the jury in condemnation proceedings for the extension and widening of certain streets in the city of Washington. *Reversed.*

The COURT in the opinion stated the case as follows:

The proceeding for the extension of Sherman avenue was instituted by the Commissioners of the District of Columbia under and by virtue of the act of Congress of March 3, 1899 (30 Stat. 1380), entitled " An Act for the extension of Pennsylvania Avenue, Southeast, and for other purposes." The act provides for the opening, extending, and widening of several streets and avenues of the city of Washington.

By the fifth section of that act, after conferring authority upon the Commissioners of the District to institute proceed-

ings for the condemnation of lands for extending and widening Sherman avenue, it is declared and provided, "That of the amount found due and awarded for damages for and in respect of the land condemned under this act for the extension and widening of said Sherman avenue, not less than one-half thereof shall be assessed by said jury in said proceedings against those pieces or parcels of ground abutting on both sides of Sherman avenue, and the extension thereof as herein provided, to a distance of 300 feet from the building lines on the east and west sides of Sherman avenue as widened and extended: *Provided,* that no assessment shall be made against those pieces or parcels of ground out of which land has already been dedicated to the District of Columbia for the purpose of widening Sherman avenue as herein provided for."

The act provides by its ninth section, that the proceedings for the condemnation of the lands as provided for shall be under and according to the provisions of chapter 11 of the Revised Statutes of the United States relating to the District of Columbia, which provides for the condemnation of lands in said District for public highways. The proceeding was taken in accordance with the provisions of chapter 11 of the Revised Statutes, and a jury of seven were summoned and sworn, and after full examination and consideration of the premises, they returned their verdict into court, whereby damages were awarded to the several owners of land taken for the widening and extending of said avenue, and also assessments for benefits to owners along the line of the improvement were made and returned as part of the verdict. Of a large number of owners whose property was affected, by reason either of the award of damages or the assessment of benefits, only a few excepted to the verdict; and among those who did except were the three appellants in the cases now before us. All the exceptions taken to the verdict returned by the jury were overruled, and the verdict, as well in respect of the damages awarded, as in respect of the assessments for benefits made, was in all things finally ratified and confirmed. It is from that order that Thomas H. G.

Todd, Mary F. Isaminger, and Caroline Mytinger have taken their several appeals to this court.

*Mr. Leo Simmons* for the appellants.

*Mr. Andrew B. Duvall,* Corporation Counsel, *Mr. E. H. Thomas,* Assistant, and *Mr. Arthur H. O'Connor,* Assistant, for the appellee.

Mr. Chief Justice Alvey delivered the opinion of the Court:

The appellants being owners of separate and different lots of ground, they filed separate exceptions; but the exceptions are identical, the one set with the others, as to the grounds of objection to the verdict. They all have relation only to the assessments, and not to the award of damages. The exceptions objected to the confirmation of the verdict upon these grounds:

1. Because the law under which said assessments were made arbitrarily requires an assessment without regard to benefits, and is therefore unconstitutional and void.

2. Because said assessments, as will appear from the record, exceed the benefits found, and are contrary to law.

3. Because the verdict of the jury does not find that said property is benefited in any sum whatever.

4. Because the assessments for benefits as returned by the jury are unequal, irregular, and are not made in accordance with the law made and provided for levying said assessments.

5. Because the law under which said assessments were levied and are to be collected is unreasonable, evasive, uncertain, and void.

In acting upon and overruling the exceptions, it does not appear that the court below had any of the facts before it upon which the jury acted in making up their verdict. The function of the judge, however, is of a very limited nature with respect to the verdict of the jury of seven. He in fact is invested with no discretion, if any of the owners of the

land taken or assessed be dissatified with the verdict as re-
turned.   By section 263 of chapter 11 of the Revised Stat-
utes relating to this District, according to which the pro-
ceedings are conducted, it is provided that, " if the proper
authorities or any owner of the lands are *dissatisfied with
the verdict thus rendered,* and no arrangement being made
between them, the marshal shall be ordered to summon a
second jury of twelve judicious, disinterested men, not re-
lated to any one interested, to meet and view the premises,
giving the parties interested at least ten days' notice of the
time and place of meeting; and the marshal and jury shall
proceed as before directed in regard to the first jury."   And
the verdict of this latter jury is declared, by section 264,
to be final and conclusive.

The filing of the exceptions to the verdict and objecting
to the ratification thereof as rendered, was sufficient evi-
dence of dissatisfaction of the exceptants with the verdict,
and it thereupon, at once and without more, became neces-
sary that a second jury should be ordered, as to the property
of the exceptants.

In the case of *Brown and Wallach* v. *The Commissioners
of the District of Columbia,* recently decided by this court
(19 App. D. C. 525), on appeal from the same order from
which the present appeals are taken, it was held, that upon
the filing of exceptions to such verdict, it at once became
the duty of the authorities, if they desired to proceed in the
work of condemnation, to order the marshal to summon a
jury of twelve, as directed by section 263 of chapter 11,
Rev. Stats. United States relating to this District; and that
there was no duty resting upon the exceptants to demand a
jury of twelve to be summoned, but it was the duty of the
Commissioners to take such action.   And applying here the
terms of the statute, and the express decision of this court
thereon, it follows that the order of the court ratifying the
verdict of the jury of seven, over the exceptions of the ap-
pellants, must be reversed, so far as the same applies to and
affects the lands of the appellants.   And this result was con-
ceded to follow, as the necessary consequence of the former

decision, by the counsel for the appellees in these cases on
the argument at bar; but since the argument they have filed
a supplemental brief in which they attempt to argue that in-
asmuch as the former appeal was taken from the order as the
same affected the lands of the appellants therein, both as to
the award of damages and the assessments for benefits, the
present appeals are distinguishable from that in this, that in
the present case the exceptions to the verdict, and the ap-
peals from the order of ratification thereof, relate only to
the assessments made upon the lands of the exceptants, and
not to the awards of damages, which are conceded to have
been paid over to the parties entitled thereto. The argu-
ment appears to be that the owner of the land is not entitled
to have the verdict set aside simply because he may be dis-
satisfied therewith by reason of the assessment made upon
his land, though he would be entitled to have it set aside
and the case referred to a jury of twelve merely by signify-
ing his dissatisfaction with the award of damages,— it being
supposed that section 263 of chapter 11, Rev. Stats., only ap-
plies to proceedings of condemnation and award of damages,
and not to the incident thereto of assessments for benefits.
In other words, that the verdict of the jury, in respect to
the same land, could be divided, and held good and effective
as to the damages awarded, but, as might be determined,
held bad and without effect as to the benefits assessed. This
contention, if it were supported, might leave the District
government in rather an awkward predicament. But there
is in reality no foundation for any such contention. Both
award of damages and assessments for benefits are author-
ized and required to be made by section 5 of the act of Con-
gress of March 3, 1899; and not by section 263 of chap-
ter 11 of the Revised Statutes. Both award of damages and
assessments are required to be made by the same jury and
returned as an entire verdict, and which verdict is required
to be ratified or set aside as found by the jury, as the same
may apply to or affect any particular parcel of land. The
section 263 of the Revised Statutes has reference only to
the mode of procedure. If the verdict of the jury were

to be ratified as to the damages awarded, but set aside as
to the assessments for benefits, either by the court below
or this court on appeal, the consequence would be that the
landowner would be exonerated altogether from all pay-
ment of assessments, as there is no provision in the law
that would authorize subsequent separate assessments in
such case.    That would contravene the plain intent and pur-
pose of the statute.

But there is another and distinct question raised in this
case, and that is as to the construction and effect of section
12 of the act of Congress of March 3, 1899, under which
these proceedings were taken.

That section provides that when the verdict of the jury
is confirmed by the court " the assessments shall severally
be a lien upon the land assessed, and shall be collected as
special improvement taxes in the District of Columbia,
*and shall be payable in five equal instalments,* with interest
at the rate of four per cent per annum until paid."    As will
be observed, the assessments are to be collected as special
improvement taxes are collected, and are made payable in
five equal instalments, without saying at what interval of
time such payments shall be made; whether annually, semi-
annually or monthly.    It is manifest that the amounts of
the assessments were not to be paid all at once; and what-
ever time was intended to be given for payment was in-
tended to be divided so as to make the payments equal in
amount and at equal intervals of time, commencing from
the first of the five instalments.    But the question of time
is left in entire uncertainty.    It is provided that the assess-
ments are to be collected as special improvement taxes are
collected, and we are referred to the act of Congress of
August 7, 1894 (28 Stat. 248), entitled "An act making
appropriations to provide for the expenses of the govern-
ment of the District of Columbia for the fiscal year ending
June 30, 1895, and for other purposes," as containing pro-
visions for the collection of special improvement taxes.
The provisions of the act under consideration do not con-
sist with the provisions of the act referred to and relied

on by, the appellees, as explanatory of the present act in regard to the proportions of payments of assessments; indeed, the time and provisions of the two acts are quite inconsistent. By the act of August 7, 1894, it is provided that one-third of the amount of the assessment shall be paid within sixty days after service of notice of the assessment, without interest; one-third within one year, and the remainder within two years from the date of the service of such notice, and interest to be charged at the rate of eight per cent per annum.

It would seem to be quite impossible, therefore, to read into this latter act of March 3, 1899, the provisions as to the time and proportions of payment contained in the act of August 7, 1894, consistently with the terms of the act of 1899. And the consequence is, that, by reason of the omission to specify the particular time when the instalments of the assessments, under the act of 1899, shall be due and payable, the power of collection is defective, and the assessments, while the amounts have been ascertained and remain liens upon the lands assessed, cannot be collected by the District authorities. The appellants contend that, while the act in all other respects may be and is constitutional and valid, the twelfth section thereof is void for uncertainty, and must therefore be treated as if it formed no part of the act. By such construction the several awards of damages for land taken would be valid and binding upon the District government, but the assessments for benefits made by the verdict of the jury, in accordance with sections 5 and 11 of the act, could be defeated and rendered null, because of the defective provision for collection. But we do not adopt a construction that leads to such an unfair result. It is conceded that the damages have already been paid to the parties entitled, as authorized by the *proviso* in section 9 of the act, and there is certainly no justice in avoiding entirely the assessments for benefits, whatever may be the difficulty in the mere act of collection. If section 12 had been omitted from the statute altogether, we should not for that reason have declared the statute void,

either as to the damages awarded, or the assessments levied, simply because there had been omitted from the statute an effective provision for the collection of the assessments. The assessments may be valid, although the means provided for their collection may be ineffectual. Such defective means of collection may be cured and rendered effective by a subsequent act of Congress.

Such a state of things as we have here is not of novel occurrence. A similar question to that presented here was presented in the case of *The People* v. *Lawrence,* 36 Barb. 177, 181, in the Supreme Court of New York. And in answer to the objection urged that the assessment was void because the act, under which the proceedings were taken, had failed to provide an effective means for the collection of the assessments, the court said "that an objection, constitutional or otherwise, to the means which the act gives for the collection of the assessment, is not necessarily an objection to the assessment itself. We should not reverse the proceedings of the commissioners, if the statute had provided no mode for the collection of their assessments, and we cannot be asked to do so because it gives a remedy for that purpose which is ineffectual or even unconstitutional." The making of the assessment is one thing, and the providing an effective method for its collection is quite another thing. The validity of the assessment does not depend upon the mode of collection. That is mere matter of procedure, in respect to a right that has been exercised.

But because the appellants, by their exceptions to the verdict of the jury of seven, expressed and made known their dissatisfaction with that verdict as rendered, and thereby became entitled to a jury of twelve, the order of the court below of the 2d of October, 1901, must, as to the appellants, be reversed, and the cases be remanded, that proceedings may be taken as directed by the statute.

Order *reversed, as to the appellants, and cases remanded for further proceedings in accordance with provision of the statute.*