The Sun Mutual Insurance Company *against* The Mayor, Aldermen and Commonalty of the city of New York.

---

The Same *against* The Same.

Where a mutual insurance company is authorized to accumulate from its profits a fund to continue liable for its losses during the term of its existence, and to issue certificates to its members setting forth their interest therein, the accumulation becomes capital, and the certificates do not represent a debt, but the interest of the members in the capital.

· Such a company is liable to taxation upon the capital so accumulated.

The title of an act entitled "An act to enable the supervisors of the city and county of New York to raise money by tax," authorizing a tax to be assessed upon the city, and directing a portion of it, for certain specified purposes to be assessed upon a particular part of the city, is in compliance with section 16 of the third article of the constitution. The act embraces but one *subject*, the levying of the tax. The mode of treating it need not be stated in the title.

The constitution does not require that the title of an act should specify all its provisions.

The plaintiff is a corporation formed under the provisions of an act passed May 21, 1841, with the powers and

Sel. IV.—31.

privileges, and subject to the restrictions and limitations contained in the act incorporating the United Insurance Company, passed May 14, 1840. By the terms of the last mentioned act, commissioners were appointed to receive applications for insurance, and as soon as such applications for insurance to the amount of five hundred thousand dollars should be received, the commissioners were to give notice of an election of trustees of the company. It was provided by the sixth section of the act, that every person insuring in the company during the year preceding each election, should be deemed a member of the company: that before effecting insurance he should pay the premium fixed upon, and that no premium should be withdrawn from the company, but should be liable to all the losses and expenses incurred by it during the continuance of its charter. The ninth section of the act, as subsequently amended contained the following provisions:

" The officers of said company shall, within one month after the expiration of one year from the day on which they shall have issued their first policy, and within the first month of every subsequent year, cause an estimate to be made, as near as may be, of the profits of the said company during the preceding year; in which estimate the losses and expenses of the company for the year shall be deducted from the earnings of said company, during the same year, arising as well from premiums as from the income derived from the investment of said premiums, and the balance (if any) shall be deemed the amount of the net profits for such preceding year; which estimate shall be binding upon all persons entitled to receive certificates as hereinafter mentioned. And the said officers shall thereupon credit on the books of said company each person, or firm, who shall have paid any premiums to said company during the preceding year, with such a portion of the said net balance (exclusive of fractional parts of ten dollars as hereinafter mentioned) as the amount of earned premiums

paid by such person or firm during such year, and not re-
turned, shall be of the whole amount of earned premiums
received by said company during said year (less returned
premium;) and shall issue to such person or firm a certifi-
cate declaring him or them, and his or their executors,
administrators or assigns, to be entitled to a portion of the
invested funds of the said company equal to the amount
so credited to him or them, and also to the receipt annu-
ally, out of the interest or income derived by said com-
pany from the investments of said profits, of an interest
not exceeding six per centum per annum; which certificate
shall contain a proviso that the amount named therein is
liable for any future loss by said company."

The eleventh section was as follows:

" Whenever the accumulation of net profits shall exceed
half a million of dollars, the excess may be applied from
year to year thereafter towards the redemption of each
year's certificates successively, in whole or in part; but
the certificates of a subsequent year shall not be redeemed
until all those of preceding years are provided for."

An amendment to the act of incorporation passed March
27, 1844, contained the following section:

" § 2. It shall be lawful for said company to invest their
funds, or any part thereof, not only in bonds and mortgages
on unincumbered real estate or *chattels real*, within the
state of New York, worth fifty per cent. more than the
sum loaned thereon; and also in all or any stocks created
by or under the laws of this state, or of the United States;
and to lend the same or any part thereof on the security
of such stocks, as provided in the seventh section of the
act hereby amended; but also to invest said funds or any
part thereof on bottomry and respondentia, and to change
and reinvest the same. And it shall be lawful for said
company, from time to time, to divide such part of the
accruing interest as they may deem equitable, not exceed-
ing six per cent. per annum, to and among the holders of
such certificates; or in case of losses to declare a *pro rata*

deduction of the amount of the outstanding certificates Original certificates may be called in by the company, and new ones issued in their stead, less the proper reduction. All certificates and interest in the company shall be deemed personal property."

At the close of the year 1845, the net profits of the company amounted to $128,858·50; in 1846, to $267,480; in 1847, to $213,059·23; in 1848, to $395,231, and in 1850, to $1,000,000. These profits were held by the company, and certificates had been thereupon issued to the insurers entitled thereto, under the provision of the several acts in relation to the incorporation of the company. In 1847, 1848 and 1849, the company had been assessed upon $128,853·50, and taxes had been laid thereupon. In 1850 it was assessed upon $950,000 of personal property, and a tax laid thereupon under the provisions of "An act to enable the supervisors of the city and county of New York to raise money by tax," passed March 23, 1850. (*Laws* 1850, *ch*. 84.) The peculiar features of this act are stated in the opinion of the court.

The plaintiff brought these actions, in the first one to restrain the collection of the taxes of 1847, 1848 and 1849; and in the second to restrain the collection of the tax under the law of 1850. The facts above stated were admitted by the pleadings, and the causes were heard in the first instance at a special term of the superior court of the city of New York, held by Mr. Justice OAKLEY, when the complaints were dismissed, and upon appeals to the general term the judgments entered at the special term were affirmed. (See 5 *Sand. R.* 50.) The plaintiff thereupon appealed to this court. The two cases were here argued together.

*S. Jones* and *H. Ketchum* for appellants. The funds of the Sun Mutual Insurance Company consist of premiums paid in for the purpose of defraying the expenses of the company and paying its losses. After these

objects are accomplished, the residue, if there be any funds left, belongs to the assured who paid the premiums; who are credited therefor according to the respective amounts paid by them. After the premiums are paid in, and until they are required for the payment of losses and expenses, they are invested for the purpose of getting interest thereon. Now neither the moneys so paid in nor any part thereof, are liable to taxation as the capital of a stock corporation. Neither in a popular nor a legal sense are they capital.

II. The popular sense of the term capital is money invested in business for the purpose of making profits thereon. Money not invested in business is not capital. The funds of a retired rich man, deposited in bank, or invested in bonds and mortgages, are not called capital. To constitute capital, it must be embarked in business, with a view to profit. " Capital, in a mercantile · sense, is the money which is employed to make other sums; and a capitalist is a person who trades with a large capital, and is commonly known by the denomination of a moneyed man." *London Encycl., title " Capital."* Webster defines capital: " A stock in trade, in manufactures, or in any business requiring the expenditure of money with a view to profit."

The premiums paid to the Sun Mutual Insurance Company were never paid with a view to profit, either of the payer or of the company; they were paid as the price of indemnity against the perils of the seas, with a hope that a part of the money might be restored; but there was no *investment* made with a view to *profit.*

III. The premiums paid in can not be regarded as capital, in the sense of that term as employed in those parts of the Revised Statutes subjecting capital to taxation. The language of the statute (1 *R. S.* 414) is: " All moneyed or stock corporations deriving an income from their capital, or otherwise, shall be liable to taxation on their capital, in the manner hereafter prescribed." The premiums paid in

are not called capital in the acts relating to the Sun Company. In the first year of its existence, promissory notes to the amount of $500,000 were given to it in advance for premiums to be earned. These notes were to be taken out in premiums, and they stood as a security for the payment of losses. Could these notes be regarded during the first year of the company as capital? They were a deposit to pay losses. They were not an investment to earn profits, but simply a deposit for a special purpose, the mutual indemnification against loss.

At the end of the first year, there was to be an estimate made of the profits, during the year; if the losses and expenses of the company should be less than the receipts from premiums and the interest which had been received from the investments thereof, then the expenses and losses were to be deducted from the amount, and the balance was to be deemed the amount of net profits for such preceding year. Here, then, this balance is called *net profits*, not capital. These net profits are credited on the books of the company to each person or firm who has paid any premiums to the company during the preceding year, and a certificate of the credit given to each one of the assured. Thus the dividends of profits are declared, and credited to the persons respectively entitled to such dividends, and these dividends are not called capital, but *profits*. Profits never were taxable as capital belonging to a corporation. *Bank of Utica* v. *City of Utica*, (4 *Paige*, 399.)

IV. If the Sun Company has a capital, and that capital does not consist of all the premiums paid in, then does it consist of the amount of net profits ascertained at the end of the year, and invested? This amount is credited to the assured, as we have seen, and they hold certificates for the same. It belongs to the assured, and is due from the company, but is held for a time to pay, if need be, the future losses of the company. The company is the simple depositary of this fund, belonging to specified persons for the purpose, until such losses are paid, of paying the in-

· ALBANY, JUNE, 1853. 247

The Sun Mutual Ins. Co. *against* The Mayor, &c., of New York.

terest on the same as an invested fund, to those persons for whom it is held. The certificates given to these persons are transferable, and are personal property in the hands of the holder. As such personal property, they are taxable according to the extent of their value, as against the holder. Where a corporation was intended to have a capital, the act creating it invariably had so declared it, and expressed the manner of dividing it into shares, and the value of each share. In the act organizing the Sun company, there is no declaration or intimation as to capital, no division into shares nor valuation of each share. The fact that the corporation is a depositary, and holder of the funds for a particular purpose, does not make it the owner of the funds, any more than a commission merchant is the owner of the goods of his principal in his hands for sale. The New York Life Insurance and Trust Company has power to receive money in trust to accumulate, to accept and execute trusts. The capital of this corporation is made a million of dollars. Who ever thought that the amount of moneys held by the company in trust was taxable as its property, or that it went to increase its capital?

V. The provisions of the statute making corporations liable to taxation on their capital, and also the provisions relative to moneyed corporations, all contemplate a fixed capital; not a capital varying in amount, but one which can neither be increased nor diminished, except by the authority of the legislature. The directors can not withdraw the capital of a moneyed corporation, or reduce its amount without the consent of the legislature. (1 *R. S.* 601.)

By the charter of this company, nothing was to be paid in. It proceeded upon the idea that the object of the subscribers was not profit on investments, but mutual insurance against loss by perils of the seas. If the money had been paid in as capital stock, the whole of such money would have been the absolute property of the corporation, and it could not have been divided among stockholders

during the existence of the company; but having been paid in for the purpose of paying losses solely, when that object was accomplished it could be divided among the assured.

VI. The principal which originally induced the legislature to tax the capital stock of corporations does not authorize the imposition of a tax on mutual insurance companies.

This principle was to make the funds of nonresidents, invested here for the purpose of making an income or profit, pay a tax,—help to bear the burdens of the state. The policy of this law was much debated at the time, and the representatives of this city in the assembly protested against its passage, on the ground that it would have the effect to divert capital seeking investment from the state, and that such diversion would injuriously affect the business of this city. Money on deposit here, belonging to nonresidents, or invested here for other purposes than *making income or profit*, was never intended to be reached by the original law on this subject, or its subsequent reenactment. (*Laws of* 1823, *p.* 390.) By section 14, all incorporated companies receiving a regular income from the employment of capital were considered persons, and made liable to taxes and assessment like natural persons. By the reenactment, (1 *R. S. Part* 1, *Chap.* 13, *Title* 4, §§ 6, 9,) all moneyed or stock corporations deriving an income or profit from their capital or otherwise, shall be liable to taxation on their capital, in the manner thereinafter prescribed. By 1 *R. S. Part* 1, *Chap.* 18, *Title* 2, *Article* 3, § 51, insurance companies are declared moneyed corporations. By 1 *R. S. Part* 1, *Chap.* 13, *Title* 1, § 4, *Sub.* 7, personal estate of every incorporated company, not made liable to taxation on its capital by the aforesaid fourth title, is exempt from taxation. If, therefore, the defendants are not liable to taxation on their capital, their personal estate is exempt from taxation.

VII. The act of the legislature of March 23d, 1850, en-

titled "An act to enable the supervisors of the city and county of New-York, to raise money by tax," is unconstitutional and void.    *Cons. Art. 3 Sec. 26 Art 7, Sec.* 13.

*S. A. Foot,* for respondent cited 1 *R. S.* 414; *Tit.* 4 §1; *id.* 599, *art.* 3, § 51; *Deraismes* v. *Mutual Ins. Co* 1 *Coms.* 371; *Howland* v. *Myer,* 3 *Coms.* 290; *Sun Ins. Co.* v. *Mayor &c.,* 8 *Barb.* 450; *Leggett* v. *Rogers,* 9 *Barb.* 413.

GARDINER, J., delivered the opinion of the court.    The various questions raised and discussed in these suits have, with two exceptions, been heretofore considered and determined by this court.    If it was customary to review matters once deliberately decided, nothing has been advanced by the distinguished counsel who have argued for the appellants, to induce us to depart from our former decisions.

The statute under which the plaintiff organized, provides, that when applications to the amount of $500,000 shall be received, trustees may be chosen: that premiums paid in the first instance shall constitute the assured stockholders, and shall never be withdrawn from the company.    This fund, although permanent and liable for all losses and expenses of the corporation during the continuance of its charter, is not, it is said, capital, because it was not constituted with a view to profit, but as the price of indemnity; capital, we are told, being money invested in business, with a view to profit.    The whole agrument against the taxation of this class of corporations to any extent, under the existing laws, rested upon this assumption.    The answer to it is, that the premiums are advanced by the persons seeking insurance, with a view both to indemnity and profit.    By the payment of the premium, the assured is entitled to indemnity, but the same act constitutes him a stockholder, and in that capacity he acquires a new interest in the fund he has parted with, for a full considera-

SEL. IV.—32.

tion.   The money becomes capital to the company of which he is a member, to be used in sustaining its credit, in paying losses, in investments by way of loan, the proceeds of which are ultimately to be divided among the stockholders.

Again, it is said that profits are not capital, and therefore can not be taxed as such.   This may be conceded as an abstract proposition.   But the appellants must go farther, and prove that profits can not be made capital, either by contract or the act of the legislature.   In ordinary copartnerships, where profits, by the agreement of the partners, are directed to accumulate, as a basis of credit or of more extended operations in a particular business, they become capital; and in the case before us, the legislature has provided for an accumulation to the amount of $500,000; and in addition the agents of the corporation, in eighteen hundred and forty-six, determined, by a formal resolution, as they rightfully could do, that no division of the profits should be made until the accumulated earnings should exceed one million of dollars.   These accumulations became capital, and liable for all debts of the corporation. It was said that the profits declared at the end of each year in pursuance of the act, became the property of the stockholders respectively.   We do not so understand the statute.   The credit upon the books of the company, and the certificates issued to its members, merely designate the interest of the respective stockholders in the corporate funds. No property passes, nor any right to the specific sum of money; and no debt against the company is created.   But the credits and certificates answer the same purpose as the stock certificates in institutions of fixed capital.   They entitle the stockholder to receive an amount of the dividends, when made, in proportion to the amount paid in or secured.   But in the mean time, the whole fund in corporations of this description, like the capital in the other class of institutions, continues liable for their debts, so that the proportional residuum only, after deducting the

losses and expenses of the corporation, is represented by the certificate, in either case. Under the old system, the capital was paid in, in whole or in part, by a time designated. In mutual companies, on the contrary, contributions may be made, from time to time, to the capital; and an interest, not merely derivative but original, acquired in it, so long as they continue to transact business.

Again, the 11th section of the act provides, that no dividends or redemption of certificates shall take place until the accumulations exceed $500,000. When this limit is reached, the excess *may be* so applied, in the discretion of the trustees. The accumulations may, therefore, go on: in other words, the capital may increase from year to year; and this corporation, as we have seen, has resolved, within the spirit of the statute, that they should proceed until they reached the sum of one million of dollars. As the capital, therefore, is not limited to one half million of dollars, the tax should not be restricted to that sum, but may extend to the whole capital, or to the accumulations intended to be used as capital.

The questions as to the constitutionality of the act of 1850, arises in the case last argued only.

One objection to the constitutionality of this law was, that by its provisions, such portion of the contingent expenses of the city of New York as related to repairing, improving and cleaning the streets south of Thirty-Fourth street was required to ! assessed upon property within that part of the corporate limits lying south of that street, instead of being assessed upon the city at large. The effect of this provision is to subject the property of individuals specially benefited, or supposed to be benefited, by the particular expenditure, to the tax necessary to defray it. This objection would apply with the same force to every local assessment. These were, however, decided by this court to be valid in *The People* v. *Mayor of Brooklyn*, (4 *Comst.* 419.)

The last objection discussed was as to the unconstitu-

.tionality of the law of 1850, under which the tax was imposed, by reason of a supposed defect in the title.

The constitution provides that "no private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." (*Con. Art.* 3, § 16.) The law in question is entitled "An act to enable the supervisors of the city and county of New York to raise money by tax." It contains but a single section, and authorizes the body named in the title to raise and collect, according to law, by tax, a sum not exceeding $1,606,675 for contingent expenses; $402,000 for public expenses; $185,000 for lamp district; and $295,000 for deficiency in the taxes of the preceding year. A part of the contingent expenses accruing from repaving the streets, &c., to be levied on property south of Thirty-fourth street, and the sum for the lamp district is to be collected within a district to be designated by the common council.

The title of the act embraces but one subject, the power to tax,—conferred upon the board of supervisors,—and is so far a compliance with the constitution. When we look at the body of the statute, we find that subject regulated and modified by special provisions, and the objects designated for which the taxes are to be levied. But these, it seems to me, are not distinct subjects within the meaning of the 16th section. If the power granted to levy the tax is one subject, which has not been questioned, then if the mode in which that power is to be exercised is another, there would be no way of complying with the constitution except by embodying the whole act in the title. So the purposes for which the money is to be raised are not different subjects, but rather the grounds assigned in the statute for the grant of the authority to tax, and for its limitation. The act does not appropriate a given sum for contingent expenses, and another for the deficiency of the preceding year, &c., but simply declares that an amount not exceeding a certain sum may be raised for

that purpose. The tax, when levied, must then be appropriated by the proper authority to the particular subjects and individuals entitled to it respectively.

There must be but one subject, but the mode in which the subject is treated, or the reasons which influenced the legislature, could not, and need not be stated in the title, according to the letter and spirit of the constitution. I think this law is addressed to a single subject, and that is expressed in the title. Whether the description of the subject might not, with propriety, be more specific, it seems to me is a question for the legislature rather than for the courts. The purpose of the sixteenth section was, that neither the members of the legislature, nor the public, should be misled by the title; not that the latter should embody all the distinct provisions of the bill in detail.

The judgment should be affirmed.

Ordered accordingly.