Neuendorff agt. Duryea.

# N. Y. COMMON PLEAS.

ADOLPH NEUENDORFF, plaintiff and appellant, agt. ABRAHAM DURYEA *et al.*, defendants, respondents.

*Theatrical and other entertainments or performances — observance of the Sabbath — constitutional law.*

The act entitled "an act to preserve the public peace and order on the first day of the week, commonly called Sunday" (*Laws of* 1860, *chap.* 501), does not violate section 16 of article 3 of the Constitution, which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject and that shall be expressed in the title."

The constitutional power of the legislature to enact laws for regulating the observance of the Sabbath cannot be questioned.

It is competent for the legislature to determine and declare what recreations or diversions are harmless and innocent, and therefore lawful, and what amusements operate injuriously upon others, or exert a baneful influence upon the community, and thus tend to a breach of the peace, and should, for that reason, be prohibited. And if the legislature, in their wisdom, come to the conclusion that certain pastimes or amusements are hurtful or injurious to others, and tend to disturb the peace and tranquillity of the public, the courts will not ordinarily, even if they have the power to do so, sit in review of the judgment and discretion exercised by the law-making power.

The words "to preserve the public peace and order," in the title of the act of 1860, properly express its object.

It is not necessary that the title of an act should declare the subject thereof in the most apt and expressive language that could be chosen. If the subject of the act is honestly and reasonably indicated by its title, the constitutional requirement will be fully complied with.

A solemn act of the legislature should not be declared unconstitutional and set aside by the courts on slight grounds.

The case of *Durkee* agt. *The City of Janesville* (26 *Wis.*, 697) reviewed and distinguished.

*General Term, December*, 1875.

*Before* LOEW, *P. J.*, LARREMORE *and* J. F. DALY, *JJ.*

APPEAL by the plaintiff from a judgment of the special term in favor of the defendants, and also from an order made at the same time denying a motion to continue a preliminary injunction.

*Henry Wehle & Charles Wehle*, for plaintiff and appellant.

*E. Delafield Smith*, corporation counsel, & *A. Oakey Hall*, for defendants and respondents.

LOEW, *J.* — The plaintiff, who is a theatrical manager, has been in the habit of giving dramatic and other entertainments or performances on Sundays, at a place, in this city, known as Terrace garden. The board of commissioners of the department of police, in the city of New York, made an order forbidding the giving of any such performances on that day, and threatened to arrest the plaintiff, and the artists in his employ, in the event of any violation of the said order. The plaintiff thereupon instituted this action against the defendants, who are the commissioners of police aforesaid, the superintendent of the police force, and one of the captains of police in said city, for the purpose of restraining them from enforcing the said order and from interfering with him in giving such entertainments on Sundays. The defendants, in their answer, averred that the commissioners of police issued the mandate in question, in pursuance of chapter 501 of the Laws of 1860, which interdicts such exhibitions on that day. To this answer, the plaintiff interposed a demurrer. The demurrer, and a motion to continue a preliminary injunction which had been granted, were argued together. The court, at special term, sustained the defendants' answer, and rendered judgment in their favor upon said demurrer, and, at the same time, vacated the injunction. The plaintiff, thereupon, brought this appeal.

The act referred to prohibits the giving of theatrical and other exhibitions or entertainments on Sunday, within the

city and county of New York. The constitutional power of
the legislature to enact laws for regulating the observance of
the Sabbath is not seriously questioned. Nor, indeed, could
it very well be; for on two different occasions have our
courts upheld the very act now under consideration as a
valid and constitutional exercise of legislative power and
authority. (*The People* agt. *Hoym,* 20 *How.,* 76; *Linden-
muller* agt. *The People,* 33 *Barb.,* 548). In the last named
case judge ALLEN, in rendering the decision of the general
term of the supreme court, delivered an able and exhaustive
opinion which, in our judgment, is conclusive on this
point.

The objection raised, and mainly relied on by the plaintiff's
counsel in this case is, that the act of 1860 is in violation of
section 16 of article 3 of the Constitution, which declares that
" no private or local bill which may be passed by the legis-
lature shall embrace more than one subject, and that shall
be expressed in the title." As this point was not raised in
either of the two cases alluded to, those adjudications do not
touch it, and we are now, for the first time, called upon to
pass an opinion upon it.

The act in question is undoubtedly a local one, and thus
comes within the legislation intended to be regulated by the
constitutional provision just cited. It is conceded that it
embraces but one subject, namely, the prohibition of dramatic
and other performances in the city of New York on Sundays.
It is claimed, however, that this subject is not expressed in
the title. The question therefore, arises, does the title of the
act conform to the requirement of the Constitution in this
respect? We think it does. The title is, " An act to pre-
serve the public peace and order on the first day of the
week, commonly called Sunday. The term "*preserve*"
means " to keep," " to secure," to " uphold," and "*public
peace*," " is public tranquillity," " that quiet, order and free-
dom from agitation or disturbance which is guaranteed by
the laws."

Neuendorff agt. Duryea.

It is competent to the legislature to determine what pastimes or amusements have a tendency to interrupt public tranquillity and cause agitation or disturbance. They may consequently, with a view to securing or upholding tranquillity, quiet and freedom from disturbance, prohibit such amusements or pastimes, and thus preserve the public peace. That which one may consider merely innocent amusement or recreation, another would perhaps deem highly reprehensible, immoral and pernicious. Who is to decide between the two, if not the law makers? It is their province to declare what recreations or diversions are harmless and innocent, and therefore lawful, and what amusements operate injuriously upon others or exert a baneful influence upon the community, and thus tend to a breach of the peace, and should, for that reason, be prohibited. And if the legislature, in their wisdom, come to the conclusion that certain pastimes or amusements are hurtful or injurious to others, and tend to disturb the peace and tranquillity of the public, the courts will not ordinarily, even if they have the power to do so, which may be questionable, sit in review of the judgment and discretion exercised by the law making power. In the present instance the legislature, judging from the title of the act, evidently regarded the giving of theatrical and other performances, in the city of New York, on Sunday, as vicious, subversive of the public welfare, and tending to disturb the public peace, and we are unable to say, judicially, that such cannot possibly be the case. As Mr. justice ALLEN very pertinently observes in *Lindenmuller* agt. *The People* (*supra*): " The gathering of a crowd on a Sunday at a theater, with its drinking saloons and its usual, if not necessary, facilities for and inducements to licentiousness and other kindred vices, the legislature might well say was not consistent with the peace, good order and safety of the city."

Again, the word " *order* " signifies " proper state or condition," " established or settled mode of proceedings." To

Neuendorff agt. Duryea.

"*preserve order*," therefore, means to keep or secure the proper state or condition or established mode of proceeding. Now, by the Revised Statutes all work and labor on Sunday, except works of necessity and charity, are forbidden under the penalty of one dollar for each offense (1 *R. S.*, 676, *sec.* 70). Thus the established mode of proceeding for a good and law abiding citizen is to refrain from all work and labor on Sunday. If he does that, he may be said to be in a proper state or condition so far as this statute is concerned. But actors and others engaged in giving theatrical and other exhibitions violate this provision of the Revised Statutes. Hence it was the design of the legislature, in enacting the act of 1860, to cause the persons engaged in the performances mentioned therein to adhere to the established mode of proceeding, and thus uphold or secure the proper state or condition, or in other words, "*preserve order*." And they seek to accomplish this purpose by increasing the penalty for the doing of any of the prohibited acts from one dollar to $500, and moreover, declaring that the offending party shall in addition be guilty of a misdemeanor.

It will thus be seen that the words "to preserve the public peace and order, &c.," in the title of the act of 1860, properly express its object. It is not necessary that the title of an act should declare the subject thereof in the most apt and expressive language that could be chosen. If the subject of the act is honestly and reasonably indicated by its title, the constitutional requirement will be fully complied with. Says chief justice CHURCH (*In re Mayer*, 50 *N. Y.*, 506) : "The Constitution does not require that the title of an act should be the most exact expression of the subject which could be invented. It is enough if it fairly and reasonably announces the subject of the act."

The same learned jurist, in the case of *The People* agt. *Briggs* (*id.*, 558) remarks : "It is not requisite that the most expressive title should be adopted, nor should courts criticise too rigidly the details of a bill to find extraneous matter."

Neuendorff agt. Duryea.

In the last mentioned case the title of the act, the constitutionality of which was questioned, was "an act to amend the several acts in relation to the city of Rochester." It was claimed by the appellants that it contained several independent subjects not mentioned in the title. The court, however, only considered the two principal points relied on. One was that the act authorized the water commissioners of the city of Rochester to contract with the trustees of adjacent villages through which the water might be conducted to the city, to supply such villages with water, and conferred authority on the said trustees, in case they made any such contract, to levy and collect the annual expense of the same with the regular annual tax of the village. The other was that the city railroad was authorized to lay its tracks under the direction of the municipal authorities, on either side of Lake avenue, instead of the center thereof. But a majority of the court were of the opinion that the act was constitutional, and that the defendants had a valid title to the office of the commissioners of public works, to which they had been appointed in pursuance of the provisions of the said act.

So, also, with respect to the police justices' act (*Laws* 1873, *chap.* 538). It directed the way and manner in which the police justices in the city of New York and their clerks should perform their respective duties, and provided for the orderly and proper administration of justice in the said courts. It also legislated the then existing police justices, police court clerks, stenographers and other officials out of office. The act was entitled "An act to secure better administration in the police courts of the city of New York." This title did not in terms indicate that the ten police justices then in office were to be ousted and an equal number of other persons appointed in their places. The court of last resort, nevertheless, held that the act was constitutional and valid, and that the new appointees were lawfully entitled to the offices held by them. The court say that every provision which had a tendency to secure better administration in those courts, and which the

law makers, in their wisdom, might deem necessary or perti-
nent to accomplish the object, could legitimately be put in
the act (*In re Wenzler* agt. *The People, Ct. of Appeals,
MS. op.*).

But it is said that the title should have disclosed that the
act is confined in its operation to the city of New York, and
that this omission is fatal to its validity. The case of *Durkee*
agt. *The City of Janesville* (26 *Wis.*, 697) is cited in support
of this proposition. The title of the act in that case was,
"An act to legalize and authorize the assessment of street
improvements and assessments." But inasmuch as its sole
object was to legalize certain proceedings of the common
council of the city of Janesville relative to assessments, the
supreme court of Wisconsin held that it was repugnant to a
constitutional provision of that state, similar to the one con-
tained in our own Constitution, and was therefore void.
Although at first view this case would seem to be decisive of
the one under consideration, yet we think that, on reflection,
it will be seen that it materially differs from the latter, and
does not aid the plaintiff. One of the objects of the provi-
sion of the Constitution referred to is, to apprise the members
of the legislature and the public of the subject of the pro-
visions of a local bill, by a mere inspection of its title, so as
to guard against fraud, misapprehension or mistake in its
passage (*The People* agt. *Briggs, supra*). Now the title of
the act passed by the Wisconsin legislature did not indicate
its object. As the court very properly say, " no one reading
this title would for a moment suppose that the sole purpose
of the law was to legalize the proceedings of the common
council of the city of Janesville in making these special
assessments." Nor is there any thing in this title from which
any one would or could infer that the act was intended to
legalize or validate all the assessments which had been laid
throughout the entire state, and that, consequently, it was
also applicable to those which had been made in Janesville.
There was, therefore, absolutely nothing in the title which

indicated, either to the legislators or the residents of Janesville, that the provisions of the act had any reference whatever to that city. In the case at bar, on the other hand, a person on perusing the title would, we think, at once conclude that the act was a general one for the better observance of the Sabbath through the whole state. Indeed, the learned counsel for the plaintiff expressly concede this in their points. Now the whole necessarily includes all its component parts, and the greater, of course, comprehends the lesser. So that, although the title does not, in terms, refer to the city of New York, it nevertheless indicates that the subject-matter of the act relates to that city. Hence, members of the legislature and residents of the city of New York had notice that the provisions of the act would affect the latter, and could have opposed its passage if they had seen fit to do so. The title of the act, therefore, did not, and could not, mislead or deceive any one. Moreover, a solemn act of the legislature should not be declared unconstitutional and set aside by the courts on slight grounds. In the language of chief justice CHURCH (*The People* agt. *Briggs, supra*), "every presumption is in favor of the validity of legislative acts, and they are to be upheld, unless there is a substantial departure from the organic law."

It results, from what has been said, that the act in question cannot fairly be said to be inconsistent with, or in contravention of, the clause of the Constitution referred to, and that the judgment and order appealed from should be affirmed, with costs.

LARREMORE, J., concurred.

J. F. DALY, J. — The act of the legislature entitled "An act to preserve the public peace and order on the first day of the week, commonly called Sunday" (*Laws of* 1860, *chap.* 501), which prohibits theatrical performances on Sunday in the city of New York, is not within the letter or spirit of the constitutional provision that " no private or local bill which

may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title" (*Const., art.* 3, *sec.* 16). Amusements, salutary or harmless in themselves, of a public character and attracting crowds of persons, may not comport with the order necessary to the due observance of the Sabbath.

It is for the legislature, representing the people, to define and establish regulations for Sunday in matters of public amusement and recreation as well as matters of business. The public selling of merchandise is prohibited by law on that day, as well as the service and execution of civil process, hunting, fishing and other sports and pastimes (1 *R. S.*, 675, 676); and so might public ball playing, regattas, and all other recreations calculated to attract crowds or to interfere in any manner with that peace and quiet which in this state it has always been the aim of the legislature to preserve on that day. Although a theater is as much the private premises of the proprietors as a store is of the merchant, it is certainly a place of resort for the public, and as much within the scope of legislative regulation on Sunday as the business of selling merchandise. There can be no limit to legislative interference with public recreations and business on Sundays if the power of the legislature to make provision for the observance of Sunday is admitted, and the latter is not questioned. All such enactments are proper in a single act " for the preservation of public peace and order" on that day, otherwise the act could be no more than a general repetition, in words, of its title, and the citizen would receive from it no information as to what he might or might not lawfully engage in ; and the public officers would either be left to the arbitrary exercise of discretion in carrying out its provisions, or be powerless to effect the end it was intended to accomplish. The numerous decisions in this state on the constitutional provision above cited are directly in point (*In re Mayer*, 50 *N. Y.*, 506; *People ex rel. City of Rochester* agt. *Briggs*, 50 *N. Y.*, 553; *Mutual Ins. Co.* agt. *The Mayor*,

Neueudorff agt. Duryea.

8 *N. Y.*, 253; *Williams* agt. *The People*, 24 *N. Y.*, 406; *Sullivan* agt. *The Mayor*, 53 *N. Y.*, 652; *Matter of Volkenning*, 52 *N. Y.*, 650; [*in memoranda*] *In re Wetzel* agt. *The People in Error*, *Ct. Appeals*, *Nov.*, 1874).

The judgment and order appealed from should be affirmed.