AARON FREEMAN, Respondent, v. THE PANAMA RAILROAD COMPANY and others, Appellants.

§ 16, art. 3, Const. — Title of act — subject of, when sufficiently stated.

It is not required by section 16 of article 3 of the Constitution, that the title of an act incorporating a company should set forth all the powers of the company or contain an abstract of the law. So long as the objects of the corporation are limited by the act to one body corporate, they constitute, in mass, the single subject which the act must contain.

The act incorporating the Panama Railroad Company states, among the objects of such corporation, that of "purchasing and navigating such steam or sailing vesels, as may be proper and convenient to be used in connection with the said road." *Held*, that such powers were conferable in conjunction with the power to construct a railroad, and need not be specially expressed in the name of the corporation; and such language, construed in the light of facts existing at the time of the passage of the act, was broad enough to cover such vessels as navigate the ocean between New York and Aspinwall on the one side, and Panama and San Francisco on the other, in connection with the railroad.

Appeal from order continuing an injunction restraining the defendant The Panama Railroad Company, and the other defendants as directors of said company, during the pendency of this action, from establishing a line of steamships to be owned, run and operated by the said railroad company between the port of New York and the port of Aspinwall, in the republic of New Grenada, and between the port of Panama, in said republic, and the port of San Francisco, in the State of California; and also from purchasing or entering into contracts for the purchase or construction, by or on behalf of or for said Panama Railroad Company, of steamships or other vessels to be used on such a line or lines.

*W. D. Shipman* and *W. W. McFarland*, for the appellants.

*William Fullerton* and *Henry E. Knox*, for the respondent.

DAVIS, P. J.:

There seems to be but two questions, necessary to be considered in this case. First. Is the act of the legislature incorporating the Panama Railroad Company void because violative of section 16 ot article 3 of the Constitution of the State? Second. Is the undertaking upon which the complaint alleges the defendants are about to enter, in excess of the power conferred upon the corporation by that act? The provision of the Constitution referred to is in these words: "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

The title of the act in question (chap. 284 of the laws of 1849) is as follows: "An act to incorporate the Panama Railroad Company." The subject of the act is the creation of a body corporate, bearing the name of the Panama Railroad Company, to be composed of the persons named in the act, and "their associates, successors and assigns," for the purposes and having the powers specified in the act. This subject, of necessity, embraces a number and variety of details, all of greater or less moment to the organization of the body corporate, and proper, if not essential, to be expressed in the act. They relate to the capital of the corporation and its increase; the number of shares into which it shall be divided, and their assignability; the officers who shall manage its affairs, how they shall be chosen, and their powers; the liability of stockholders and how enforced; the extent and character of the business which the corporation may carry on, and the powers and authority which it may use for that purpose. All these details, and as many more of like character as the act embraces, are objects of the corporation, the creation of which is the subject of the legislative act; and, so long as these objects are limited by the act to one body corporate, they constitute in mass the single subject which the act must contain, and which the title may express in the form adopted in this case under the provisions of the Constitution above recited. To hold otherwise is to hold that the title of the act must contain all these details and set forth every power, duty and obligation of the body corporate. That was, clearly, not the intent with which the constitutional provision was framed, and the omission of such details in the title of an act, is not the mischief sought to be pre-

vented.   In the first case that arose under section 16 of article 3 of the Constitution, the Court of Appeals held that " the design of the constitutional provision was to prevent the uniting of various objects, having no necessary or natural connection with each other, in one bill, for the purpose of combining various pecuniary interests in the support of the whole which could not be combined in favor of either by itself." (*Conner* v. *The Mayor*, 1 Selden [5 N. Y.], 293.)   This, in substance, but in different forms of expression, has been held to have been the design, by the numerous cases that have since arisen, as in *Brewster* v. *The City of Syracuse* (19 N. Y., 116), where the title was : "An act for the relief of James Ley & Son," and the court held that the title sufficiently expressed the subject within article 3, section 16, of the Constitution, although the relief was to be effected by the assessment and collection of a tax by a municipal corporation.   The court held that the steps by which the relief was to be brought about were not a distinct subject, but minor parts of the one general subject, and that an abstract of the law is not required to be in the title.

In the case *Sun Mutual Insurance Company* v. *The Mayor* (8 N. Y., 241, 253), the court said : " The purpose of the sixteenth section was that neither the members of the legislature nor the public should be misled by the title, not that the latter should embody all the distinct provisions of the bill in detail."

In the *People* v. *Lawrence* (36 Barb., 192), Emott, J., says : " It must not be overlooked that the Constitution demands that the title of an act shall express *the subject*, not the *object*, of the act. * * * It is no constitutional objection to a statute that its title is vague and unmeaning as to its purpose, if it be sufficiently plain as to the matter to which it refers."

In the *People ex rel. Davies* v. *The Commissioners of Taxes* (47 N. Y., 501, 505), where the title was "An act to make provision for the government of the county of New York," and a provision of the act repealed in part a former act, exempting the real estate of the New York Hospital from taxation, the court held that it was not foreign to the subject of the bill, as expressed in the title of the act, to remove or modify the exemption, and thus add to the subjects of taxation ; and they cite, with approval, *The Sun Mutual Insurance Company* v. *The Mayor* (*vide supra*).   The cases are too

numerous to bear further citation, and it need only be observed that they are quite uniform in the views above expressed.

The section of the act of 1849 upon which the question in this case arises, declares the object of the incorporation as follows : "For the purpose of constructing and maintaining a railroad with one or more tracks, and all convenient buildings, fixtures, machinery and appurtenances, across the Isthmus of Panama in the Republic of New Grenada, under the grant made by the said Republic to the said William H. Aspinwall, John L. Stevens, and Henry Chauncey, and of purchasing and navigating such steam or sailing vessels as may be proper and convenient to be used in connection with said road, and for such purposes all the necessary and incidental power is hereby granted to such corporation." Unless it is to be held that power to purchase and navigate such steam or sailing vessels, as may be proper and convenient to be used in connection with a railroad, cannot be granted unless the title of the act creating the corporation expresses that particular power, this provision is not obnoxious to the Constitution:

It is not understood that the court below held, or that the counsel for the respondent now insists, that the act is void, unless it is to be construed as giving the power sought to be restrained by this action. But so far as the validity of the act under section 16 of article 3 of the Constitution is concerned, it must stand or fall upon its plain language.

Either the conferring of the power to purchase and navigate such steam and sail vessels as may be proper and convenient to be used in connection with the railroad, is another *subject* illegally embraced in the act, and not expressed in the title, or it is part of the one subject for which the corporation is created. If it be the latter, the act is free from the constitutional objection, and all that is left, is a simple question of *ultra vires*, to be determined upon the meaning of the language used. In short, if the language used means that the corporation, in the exercise of its powers, may do the things charged in the complaint in this case, and thereby sought to be restrained, then the question, under the provision of the Constitution, is precisely as if the power to do these things were written out in the body of the act in plain terms. Would the act, if that were the case, have been void under the provision referred to?

The act would then have read, in substance, " for the purpose of constructing and maintaining a railroad, etc., etc., across the Isthmus of Panama, and of purchasing and navigating such steam and sailing vessels from the several termini of said railroad, to and from the cities of New York and San Francisco, as may be proper and convenient to be used in connection with such railroad."

Unless we are to hold that such a power is, for some reason, not conferable in conjunction with power to construct a railroad, or that it cannot be part of the objects for which a corporation may be created, without expressing it specially in the name of the corporation, as given in the title of the act creating it, there is no force in the objection. But we are able to see no lack of power in the legislature to confer such rights; nor if conferred in an act creating a single body corporate, that it would be any more necessary to express it in the title than to express the power to purchase such vessels for the uses to which the plaintiff claims the company is limited.

The result is, that the case reduces itself not to a question of constitutionality, depending upon construction, but to one of *power* granted under and by a clearly constitutional act, depending upon the intent of the legislature in using the language contained in the act. This, we think, is the serious and difficult question of the case.

The legislature must be presumed to have known the geographical *situs* of the contemplated railroad, and that it was proposed to be built across a narrow isthmus, separating two oceans, for the purpose of connecting the commerce of those oceans, and with little or no regard to, and with no hope of, support from the traffic of its locality. They saw the arduous and expensive nature of the undertaking, and that failure or success altogether depended upon whether the corporation, by the powers and facilities granted, could make itself the carrier of a remunerative inter-ocean commerce and travel. It was then quite as apparent as now that unless there should exist lines of traffic between the great centers of commerce on the Atlantic and Pacific coasts, which should seek carriage across the Isthmus of Panama by the contemplated railroad, it would be of no value either to the company or to the world.

It was in the light of these facts that the powers were granted,

and it is in the same light that they should be construed. It appears that the Pacific Steamship Company had already been chartered with the widest powers to navigate the Pacific ocean, and that lines of transportation existed from New York to Aspinwall on the Atlantic; but it by no means followed that these lines would be continued. They might, at any moment, be withdrawn or diverted, so that the business they brought to either terminus of the railroad would cease to be a means for its support. We cannot avoid the conviction, that it was in view of such possible contingencies that the legislature granted the powers contained in the act, in respect to the right to purchase and navigate such steam and sailing vessels as may be proper to be used in connection with said railroad. It is urged that this language only intended to confer the right to use such *steam tugs and lighters*, as might be necessary for transhipment from the railroad to vessels on the Pacific coast, where steamers and sail vessels cannot approach nearer the terminus of the road than three and a half miles. To that limitation the language is inapt. If designed to such a narrow sense, better fitted words would have been used. Commercial men do not speak of "purchasing and navigating steam and sailing vessels," when they mean lighters and tugs used simply for lading and unlading such vessels. If the sense be broad enough to include lighters and tugs, it is also broad enough to cover such vessels as navigate the oceans between New York and Aspinwall on the one side, and Panama and San Francisco on the other, and few persons would fail to accept them in the larger sense. Besides, it was probably not at all necessary to use this language to confer power on the railroad to embark and disembark its traffic at its termini. That power would be implied from the general authority couched in the grant, " of all necessary and incidental power." It would follow that the power of any railroad company, when circumstances required it, to employ conveyances and men to deliver freight and passengers to its continuous or connecting lines of travel at and from its respective termini, was an incidental one, not requiring special expression in the charter. We think that the intent of the legislature was, in this case, to grant the power, whenever it became necessary and convenient to purchase and navigate such steam and sail vessels to be used in con-

nection with the road as its exigencies should require, and that the purchasing of steam vessels to navigate the oceans between San Francisco and New York by the route of the defendant's railroad, as charged in the complaint, is not in excess of its powers. It appears by the affidavits, on the part of the defendants, that this exercise of power has become necessary, for reasons therein stated, and is not a wanton or improvident abuse. It follows that the injunction should not have been granted.

The order appealed from should be reversed and the injunction dissolved, with ten dollars costs, besides disbursements, and with ten dollars costs of opposing the motion below.

Brady, J.:

I concur in the result at which my brethren have arrived. I *do* so because the acts sought to be restrained relate to connections by steam vessels *from this port* with the defendant's road across the isthmus, and which would seem to be essential to its success. It does not matter, perhaps, whether the road is reached by the defendant's vessels secured by charter or purchase. There is great force, nevertheless, in the suggestion of Justice Donohue that the right to purchase and employ steamers in the manner contemplated may, if it be exercised at all, be so extended as to include navigation from all places.

It is not difficult to understand, however, that if such a proceeding were attempted it could be prevented by a proper application. I cannot avoid the thought that the question discussed in this case is delicate and not free from doubt.

Daniels, J., concurred in opinion of Davis, P. J

Order reversed, injunction dissolved with ten dollars costs of opposing motion.