### ADAMS ET AL. EX'RS. v. SHIELDS, TREASURER.

1. SCRIP CERTIFICATES ISSUED BY A CORPORATION ARE NOT TAXABLE.

    Where scrip certificates are issued by a corporation instead of shares of stock, for portions of the net earnings of the company which have been used by it in enlarging its plant, and it appears by the resolution of the directors authorizing the issuance of such scrip that there was no promise to pay the dividend in money, except upon a condition which never arose, such scrip cannot be called certificates of indebtedness, and, therefore, cannot be in the nature of a bond of the company; and, if a bond at all, it is only for future stock, and, as such, it is not within the statute, enumerated as taxable property.

2. WHAT AMOUNTS TO A FALSE RETURN UNDER SEC. 2781, REV. STAT.

    In order that a return be false under sec. 2781, Rev. Stat., it must appear that one making the return, either designed to mislead or deceive the assessor or that he at least was guilty of culpable negligence; and, therefore, a person having an honest belief founded upon good and sufficient (legal) authority that certain property is not taxable, and for that reason fails to return such property, he is not guilty of making a false return or evading a return under the provisions of sec. 2781, Rev. Stat.

INJUNCTION—

CALDWELL, J.

The plaintiff brought this action to enjoin the defendant from collecting the taxes on certain property that belonged to Moses C. Younglove in his life-time and at the time of his death, and since his death to the said executors of his estate, which taxes, it is claimed, were by the county auditor placed upon the county tax duplicate without warrant of law.

The facts of the case are mostly admitted, and no serious controversy as to any of them.

April 13, 1892, Moses C. Younglove died testate. At the time of his death and for many years prior thereto, he had resided in Cleveland, Ohio.

Adams et al. Ex'rs. v. Shields, Treasurer.

The executors of the estate, the plaintiffs in this action, are residents of Cuyahoga county, Ohio, and have there resided at all times during their trust.

Moses C. Younglove, on the day before the second Monday of April in each of the following years, was the owner of and held scrip certificates in The Cleveland Gas Light & Coke Company, as follows:

For 1887, 11,233 shares of the par value of............... $112,230
     1888, 19,021    "            "            ............... 190,210
     1889, 19,026    "            "            ............... 190,260
     1890, 22,147    "            "            ............... 221,470
     1891, 25,580    "            "            ............... 255,800
     1892, 25,580    "            "            ............... 255,800

During none of these years did Mr. Younglove include in his return of his property for taxation, any of said scrip certificates, nor did the executors return them for the year 1892.

The county auditor, after proper notices to the executors and after hearing testimony decided to tax the certificates for each of the years before named and for the amount before named, as owned each year by Mr. Younglove or his estate; and the auditor on August 15, 1893, entered for taxation an amount equal to the par value or amount of said scrip certificates of indebtedness, increased by a penalty of fifty per cent. of the same for the respective years and multiplied the same by the rate of taxation for said years. These entries were carried into the auditor's book as provided by law and were placed on the county treasurer's book for collection, and the auditor gave the treasurer the certificates provided by law.

The county treasurer was about to proceed to collect the taxes and this added increase by his fifty per cent. penalty, when this action was brought to restrain such a collection.

The Cleveland Gas Light & Coke Company is a corporation incorporated under an act passed February 6, 1846, with, a capital of forty thousand dollars divided into shares of ten dollars each.

On March 17, 1894, this act was amended and the capital increased to sixty-five thousand dollars.

The capital was, after years, increased until 1871 there were 75,600 shares, face value $756,000.

In 1893, by authority given, the stock was increased to $3,000,000 divided into shares of $100 each.

The Cleveland Gas Light & Coke Company was an Ohio corporation, having its business and property wholly within Cuyahoga county, Ohio.

June 17, 1873, the board of directors of said company adopted the following resolution:

"Whereas, The earnings of profits of this company amounting to more than $151,200, have, from time to time, been invested in the extension of the company's works, and providing additional facilities for production and distribution made necessary by the increased demand for gas, and in that manner a large addition has been made to the value of the property of the company by withholding from the stockholders monies which have been fairly earned, and but for the above mentioned expenditures would have been paid to them: and,

"WHEREAS, Upon a fair and just estimate of the property of the company, it has been in this manner increased in value over the amount of the present capital stock by at least the said sum of $151,200; and,

"WHEREAS, The stockholders desire to realize without impairing the property of the company or profits which have been thus invested, and to make them more available; Now therefore, it is,

"*Resolved*, That a dividend from the profits of the company thus invested, of two dollars for each share of the present capital stock of the company, to be paid *pro rata* to holders thereof in scrip after the form following, which scrip shall entitle the respective holders thereto to all the privileges and advantages declared and expressed therein."

The form of the certificates of scrip used in the different issues of the same is as follows:

"THE CLEVELAND GAS LIGHT & COKE COMPANY,
                              "June 17, A. D. 1873.
                              "No. of Shares ........

"No. ............ of scrip.

"This is to certify that ...... ........................ and ......... heirs or assigns will be entitled, upon the surrender of this certificate, to shares of ten dollars each of the capital stock of this company, whenever and so soon as such capital shall be increased one hundred and fifty-one thousand and two hundred dollars ($151,200) or more, above the present amount thereof, and until such increase is made and this certificate surrendered for conversion, dividends from the earnings of the property or from the proceeds of the sale of its property whether made in money or in scrip, shall be paid to the owner of the certificate appearing as such upon the books of the company, *pro rata*, with and the same as to the owners of the shares of the capital stock; provided, however, that if at the time of the increase of the capital stock there shall exist any legal disability which will prevent the conversion of this certificate into stock, there shall be paid to the owner thereof upon demand and its surrender, the par value in money of the shares as herein provided for. This certificate is transferable only at the office and upon the books of the company.

"Witness the corporate seal of the company and the signatures of the president and secretary, at Cleveland, this ...... day of..................., 18....

"............................:........ President.
"................................ Secretary.

"Seal of Company.
(There was printed on the back of it this language:)

"For valve received the undersigned ..................... assigned and transferred unto ........ ......... all ......... right and title to the scrip certificates of The Cleveland Gas Light & Coke Company, and do hereby constitute and appoint ....................... true and lawful attorney for and in ......... name and behalf to make and execute all necessary acts of assignment, transfer and surrender ......... required by the terms of said scrip certificates, and the regulations and by-laws of that company.

"In witness whereof I have hereunto set ......... hand and seal this ........ day of ................. , 18...
Sealed and delivered in the
presence of................... .....

"..... .. ............... Seal."

The Cleveland Gas Light & Coke  Company made nine issues in all of scrip certificates.   The company from year to year used the profits of the company in extending its plant, mains, etc., and then gave out to the stockholders the scrip certificates, which the stockholders retained until February 14, 1893, and then they were exchanged for stock.

On January 22, 1874, the board of directors passed the following resolution :

"WHEREAS, The earnings and profits of this company amounting, in excess of all previous dividends, to more than $90,730.00, which amount has been invested in the property of the company, increasing the value of the same by at least that amount ; and,

"WHEREAS, Stockholders desire to realize without impairing the property of the company or profits which have thus been invested, and to make them more available, and for that purpose they have this day hereunto duly authorized this board ; therefore,

"*Resolved*, That a dividend from the profits of the company one dollar on each share of the present stock and scrip one dollar, amounting in all to 90,720 shares to be paid *pro rata* to the holders of said stock and scrip respectively, in scrip, to be known as scrip No. 2, bearing this date, to be issued in the same form and manner in all other respects as that known as scrip No. 1, as shown in the records of this company, on the seventeenth of June, 1873, and bearing that date ; said scrip like the former shall entitle the respective holders thereof to all the privileges and advantages declared and expressed therein."

At the time said scrip certificates known and numbered 3, 4, 5, 6, 7, 8, and 9, were issued, the board of directors of said company passed and placed on their minutes a resolution similar in all respects to the one foregoing, except that each successive resolution provided for issuance of scrip upon all issues of scrip theretofore made, and the capital stock.

Aside from the portion of the net earnings of the said company, used by it as afore stated and for which it issued scrip certificates, other portions of the net earnings of the company, not used in extending its property, were from time to time divided in money among the stockholders as dividends.

The Cleveland Gas Light & Coke Company at all times during the years of the issuing of said scrip certificates and down to the time of the commencement of this action returned from year to year to the proper officer what purported to be a list of its capital stock and all its property and paid all taxes assessed thereon.  A short time before said The Cleveland Gas Light & Coke Company issued said scrip certificates the first time, the directors of the same applied to Morrison R. Waite, of Toledo, Ohio, and Judge Rufus P. Ranney of Cleveland, Ohio, for advice and counsel as to whether the company could issue scrip certificates; to give the company a proper and legal form of certificates as to whether the form by them furnished would, under the laws of Ohio, be the subject of taxation.   The directors of the corporation were, by these eminent jurists, advised as to the form of certificate and that the scrip certificates would not be, under the laws of Ohio, taxable.

The purpose of the corporation in issuing scrip certificates instead of shares of stock for portions of net earnings of the company by it used in the extension of mains, etc., was, that it could not issue such stock without legislative permit, and if such permit were obtained, it would be after the new state constitution which would subject the company to the

9  O C D  36

laws under the new constitution, and for certain reasons it did not wish this at that time.

The questions of law for determination in this case are: Are the scrip certificates taxable under the laws of Ohio? And had the auditor, under the facts of the case, authority of law for placing the tax and penalty on these tax certificates in the year 1892 for the years 1887, 1888, 1889, 1890, 1891 and 1892?

The auditor did this under sec. 2781 Rev. Stat., which is as follows:

" If any person whose duty it is to list property or make a return thereof for taxation, either to the assessor or county auditor, shall in any year or years make a false return or statement, or shall evade making a return or statement, the county auditor shall for each year, ascertain as near as practicable, the true amount of personal property, monies, credits and investments that such persons ought to have returned or listed for not exceeding the five years next prior to the year in which the inquiries and corrections provided for in this and the next sections are made; and to the amount so ascertained for each year he shall add fifty per centum, multiply the sum or sums thus increased by said penalty by the rate of taxation belonging to said year or years, and accordingly enter the same on the tax lists in his office, giving a certificate therefor to the county treasurer who shall collect the same as other taxes."

Counsel for defendant claim that the scrip certificates are mere evidences of indebtedness or certificates of indebtedness, in which the company agrees to pay in money, and, as such, are mere bonds of the company, and hence taxable under sec. 2746, Rev. Stat., which reads:

" Personal property of every description, monies and credits, investments in bonds, stocks, joint stock companies, or otherwise, shall be listed in the name of the person who was the owner thereof on the day preceding the second Monday of April, in each year; but no person shall be required to list for taxation any share or shares of the capital stock of any company, the capital stock of which is taxed in the name of such company."

They further claim that they are not shares of stock, as the corporation had no authority to issue them as stock, nor did they intend to do so, and, though they may be in some respect like shares of stock, yet not being stock, they are not exempt.

Counsel for plaintiffs claim that the scrip certificates represent shares in the capital of the company, and the company being an Ohio corporation paying taxes on its property in this state, there is no authority or law for requiring these scrip certificates to be listed for taxation.

They also claim that neither Mr. Younglove nor the executors of his estate, either fraudulently or negligently made a false return or evasively withheld the return of the scrip for taxation, and hence the auditor had no jurisdiction to act under sec. 2781, Rev. Stat.

The surplus or earnings of a corporation belong to the corporation and the corporation must list the same for taxation and pay the taxes thereon. The corporation ceases to be such owner and is relieved from the taxes thereon only when it declares a dividend out of such surplus and pays it out to the stockholders. The dividend may be declared by the corporation and, instead of paying the money, it may issue to the stockholders scrip certificates of indebtedness. This is sometimes done where the money representing the surplus is loaned out at the time the dividend is declared, or, is, for any other reason, not available at the time the dividend is declared. Scrip certificates of this nature are certificates

Adams et al. Ex'rs. v. Shields, Treasurer.

of indebtedness; they are promises to pay and usually fix the time for payment and bear interest; if not paid when due, the holder may sue on them to recover. The company, by issuing such certificates appropriates the money to pay its declared dividend to its stockholders. It gives up its right to retain the money as its own. On the other hand, if the corporation appropriates its surplus to its own uses, invests it in its plant and business in such a way that the investment must be permanent, and then announces such investment to its stockholders and issues to them scrip certificates in which it promises that it will at some time in the future issue to such stockholders a certain amount of stock, if the law then permits such issue, the result is entirely different. The corporation does not in any way change its situation; it still owns, holds and controls as its own, the entire surplus. It has not declared, by word or act, any intent of giving up, at the time, nor in the future, to the stockholders any part of the surplus; it makes no promise to pay; it has done nothing to change its relation or the stockholder's relation to the surplus. The stockholder gains nothing; he is no richer after he gets his scrip than he was before; he has no more nor no less than he had in the company; he gets no promise of any more. All that the company has parted with is a promise to issue stock. All he gains is a promise to be given stock. The certificate accomplishes nothing beyond this.

It is easy to be misled by the fact that the owners of the scrip certificates can borrow money on them. Suppose the scrip has never been issued, and Mr. Younglove had gone to the directors and had them certify by a letter to him, the amount of the surplus and what part of it would go to him, either in money or stock, when the surplus should be divided, he could have taken his letter to any bank in Cleveland, and, on the information in it contained, he could have borrowed money by pledging his prospects of sharing in any future distribution of such surplus.

No one would for a moment contend that such a letter would be property even if it contained a positive agreement to give Mr. Younglove his *pro rata* in stock in the future, at the option of the company.

The scrip has no value in and of itself beyond its promise to issue stock; hence a pledge of it can be no security beyond that promise.

June 17, 1873, The Cleveland Gas Light & Coke Company passed a resolution reciting the facts, that a surplus had been earned and invested in its works the same as its original capital, by which the value of the property had been largely increased, and which earnings, if not thus used, would have been used for dividends, and as the holders of the stock desired to realize without impairing the property of the company, or the profits which have been thus invested, and to make them more available, therefore it resolved that from the profits a dividend of two dollars for each share of the present capital stock to be paid *pro rata* to the holders thereof in scrip after the form following, which scrip entitled the respective holders thereof to all the privileges declared and expressed therein.

This resolution declares a dividend in scrip of two dollars on each share, but how the scrip is to be paid, is not stated in the resolution but, for terms and manner of payment, refers to the scrip certificate.

The certificate certified that————, his heirs and assigns, will be entitled to so many shares of ten dollars each of the capital stock of the company, whenever and so soon as such capital stock shall be increased $151,200 or more : Then it provides for dividends on the scrip the same as on the stock when future dividends of money or stock are declared. Then it provides that, if at the time of the increase of the capital stock,

there shall exist any legal disability which will prevent the conversion of this certificate into stock, there shall be paid to the owner thereof, upon demand and its surrender, the par value in money, of the shares, as herein provided for.

In this resolution and scrip, there is no promise to pay the dividend in money except upon a condition which never arose. There was a condition precedent to any promise to pay money. The scrip being redeemed by the issue of stock when the condition precedent did not exist, the promise to pay money is now to be considered as if never made.

The entire plan and arrangement as set forth in the preamble to the resolution show there was no intent to pay money. Hence it follows, the scrip can not be called certificates of indebtedness and, therefore, can not be in the nature of a bond of the company. If a bond at all of the company, for any thing, it is only for future stock, and, as such, it is not within the statute, enumerated as *taxable property*.

Suppose this last statement to be incorrect and that such a bond is contemplated by the statute, then does it follow, because only investments in stocks in domestic corporations that pay tax on the corporate property are exempt, that this scrip not being stock, can not be exempt? This must depend upon the intent and purpose of the statute.

The policy of the legislature is to tax investments in the stock of foreign corporations, but not to tax such investments in domestic corporations. Why this distinction? It is not intended as a gratuity or a charity. It is on this basis: for the purpose of taxation, the former kind of stock is considered a distinct kind of property as distinguished from the corporate property, while, in the latter (a domestic company) investment in stock is not, as property, considered distinct from corporate property. If a domestic corporation has paid the tax on its property, it has, within the meaning of the tax law, paid the tax on the investment in its stock. This is certainly the meaning of the law, and the only reason for making the exemption.

It follows most conclusively that investments in the stock of a domestic corporation, within the meaning of the statute, means investments in the capital or corporate property of the company.

This, then, being the intent and meaning, it matters not how such investment is evidenced. We need not, when we have the object itself, hunt for the shadow. It is not important whether the shadow be a certificate of stock, or a scrip certificate for stock, for the object itself is investment in the capital stock, and the scrip being evidence of the investment, it is not taxable.

It has been urged that the scrip certificates are property, are assignable, may be separated in ownership from their parent stock, and thus become a distinct and independent class of property. Suppose this is all true, does it follow that it is not exempt from taxation?

The certificate, under my ownership, does no more than to represent a promise to issue stock, and this promise reflects upon it its value and, as before said, the property whatever it is, within the meaning of the tax list, is the investment in the corporation property and is not taxable.

It has been held by the highest courts of other states and the Federal courts, that a scrip certificate which does not promise to pay money but only a dividend in stock, and shows that the corporation retains as its own the surplus, will not relieve the corporation from paying taxes on the surplus: People's Gas Light Co. v. Assessors, 16 Hun., 196;

IX.            CIRCUIT COURTS.            **565**

Adams et al. Ex'rs. v. Shields, Treasurer.

People v. Assessors, 75 N. Y., 202; Dutton v. Bank, 53 Kas., 454; Sun Mutual Ins. Co. v. Mayor, 8 N. Y., 250; Bailey v. R. R. Co., 22 Wall., 604; Same v. Same, 106 U. S., 109.

If the company is not relieved from payment of tax on this surplus, then, if right in what I have said before, the scrip owner need not pay.

The plaintiffs claim that neither Mr. Younglove nor they as executors of his estate, made false return or statement; nor did they evade making a return within the meaning of sec. 2781, Rev. Stat., even if these scrip certificates were taxable. This proposition is to be determined by the facts in the case, bearing upon this question, and the construction of this section by the Supreme Court. This section has repeatedly been before the Supreme Court for construction.

In Ratteman v. Ingalls, 48 O. S., 468, and in Probasco v. Raines, 50 O. S., 379, that court held that in order that a return be false under sec. 2781, Rev. Stat., it must appear that the one making the return, either designed to mislead or deceive the assessor or that he at least was guilty of culpable negligence; that the word "evade" in the statute means "*to avoid by fraud or contrivance.*" It would seem to follow that where there is no false return or evasion, under this section, there is no authority under this section to correct or make the return either as to the regular tax or penalty.

It only remains to determine under the facts of the case, whether Mr. Younglove or his executors had an honest belief founded upon good and sufficient authority, for not returning the scrip certificates for taxation.

The corporation, before issuing the scrip certificates, took the advice and counsel of Morrison R. Waite, of Toledo, Ohio, (who was thereafter the Chief Justice of the United States), and Judge Ranney of Cleveland, Ohio. The proof shows that these eminent attorneys advised the directors of the corporation, of which advice Mr. Younglove had full knowledge before the certificates were issued, that these certificates would not be taxable under the laws of Ohio.

There was no material change in the law under which this advice was given, and the law that existed during the time of the issuing of these certificates.

Mr. Younglove upon this advice, believed these tax certificates were not taxable, and, after his death the executors who had the same information, believed the same as is testified in this case.

Aside from this, a large amount of these tax certificates issued in Cleveland by the gas company, were used freely in the banks of the city of Cleveland. It was a matter of public notoriety. It is much more likely that the taxing officers of the county knew of the existence of these certificates, and knew that they were not returned for taxation. It is not an unreasonable conclusion in this case, to draw, that all parties had full knowledge as to the existence of the certificates, and that all have for years acquiesced in their non-taxability.

If Mr. Younglove relied upon this advice and counsel that I have stated, and for this reason did not return his tax certificates in the honest belief that they were not taxable, then he was not guilty of making a false return or evading a return under sec. 2781, Rev. Stat.

This being true, the auditor had no right to make the assessments in question against the estate of Mr. Younglove, being entirely without jurisdiction as before stated.

The injunction is allowed and made perpetual.

*Judge W. W. Boynton*, and *Squire, Sanders & Dempsey*, for plaintiffs.

*Peter Kaiser*, county solicitor, *Judge J. M. Jones*, and *Gen. E. S. Myers*, for defendant.